In the Matter of the Application of THE LONG ACRE ELECTRIC LIGHT AND POWER COMPANY, Respondent, for a Writ of Mandamus against THE CONSOLIDATED TELEGRAPH AND ELECTRICAL SUBWAY COMPANY, Appellant.

1. CORPORATIONS — SALE OF FRANCHISE BY RECEIVER TO AN INDIVIDUAL. The sale of the franchise of an insolvent electric company to an individual, made at public auction by the receiver, vests in the purchaser all the rights conferred by the original franchise.

2. VOLUNTARY ASSIGNMENT OF FRANCHISE BY CORPORATION TO AN INDIVIDUAL — NEW YORK ELECTRICAL SUBWAY COMPANY. The validity of a voluntary assignment by an electrical company of its franchise to an individual acting as a conduit to transmit the title to another corporation about to be formed and to which he thereafter assigned it, cannot be successfully questioned by the New York Electrical Subway Company upon an application for space in the subway by the holder of the franchise.

3. MANDAMUS TO COMPEL GRANTING OF SPACE IN SUBWAY — CONSENT OF COMMISSIONER OF ELECTRICITY NEED NOT PRECEDE APPLICATION FOR SPACE. The applicant may mandamus the Subway Company upon its refusal to assign space and it is not necessary that the consent of the commissioner of water, gas and electricity to place its conductors in the subway should precede the application to the company.

*Matter of Long Acre El. L. & Power Co.*, 117 App. Div. 80, affirmed.

(Argued April 4, 1907; decided April 30, 1907.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 18, 1907, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the defendant to assign to the petitioner space in its subways for electrical conductors.

The facts, so far as material, are stated in the opinion.

*Alton B. Parker* and *Henry J. Hemmens* for appellant. The attempted grant of the franchise by the American Electric Manufacturing Company in 1888 to an individual was illegal and invalid and no title passed thereby, hence the respondent, which claims under and through it, is not an authorized company and has no lawful power to operate electrical conductors in the streets, avenues and highways of the city of New York. (*Matter of B. E. R. R. Co.*, 125 N. Y. 434; *B. S. T. Co.* v. *City of Brooklyn*, 78 N. Y. 524; *Farnham* v. *Benedict*, 107 N. Y. 159; *People ex rel. Hearst* v. *Ramapo*, 51 App. Div. 145; *A. G. L. Co.* v. *Aspen*, 37 Pac. Rep. 728.) The respondent is not a lawfully authorized company. It has no special or secondary franchise and, therefore, the appellant cannot under the statutes and contracts accord space to it in its ducts. The franchise of the American Electric Manufacturing Company could not pass from that company to an individual such as Townsend by the pretended grant. That franchise is not vested in the respondent who claims through Townsend, but is still vested, if it ever vested at all, in the American Electric Manufacturing Company. The pretended assignment to Townsend was against public policy. The state, the source from which the franchise came, never vested in Townsend or in Minturn the power either to receive or operate said franchise. This objection applies to each of the attempts to transfer the franchise to an individual. (*Hays* v. *Ottawa, etc.*, 61 Ill. 422; *Tippecanoe* v. *L., etc., Co.*, 50 Ind. 35; *Anderson* v. *C. S. R. Co.*, 86 Ky. 44; *Com.* v. *Smith*, 10 Allen, 448; *Richards* v. *M. R. R. Co.*, 44 N. H. 127; *S. C. Co.* v. *Bonham*, 9 Watts & S. 27; *I., etc., R. Co.* v. *Eckford*, 71 Tex. 274; *Acker* v. *A., etc., R. Co.*, 84 Va. 648; *Gibbs* v. *Con. Gas Co.*, 130 U. S. 396; *MacGregor* v. *D., etc., R. Co.*, L. R. [18 Q. B.] 618.) The appellant has the right to refuse to allot space in its subways to an unauthorized company. It can object to respondent's claims. (*B. E. I. Co.* v. *C. T. & E. S. Co.*, 60 Hun, 446; *Zanesville* v *G. L. Co.*, 47 Ohio St. 1; *Allen* v. *Clausen*, 114 Wis. 244; *N. O. G. L. Co.* v. *L. L. & H. Co.*, 11 Fed. Rep. 277; *Ghee* v.

*N. U. Gas Co.*, 158 N. Y. 510 ; *Lamming* v. *Galusha*, 81 Hun, 247 ; *Eaton* v. *Aspinwall*, 19 N. Y. 119 ; *O. R. R. Co.* v. *Oakland*, 45 Cal. 365.) No title to the alleged franchise passed at the receiver's sale. (Code Civ. Pro. § 1242.) Under the charter of Greater New York and the rules and regulations of the department of water supply, gas and electricity, made pursuant thereto, the respondent should, in the first instance, have applied to that department for a permit to be allowed to draw its cables in the appellant's ducts, or for the construction of new subways, if there were not sufficient already constructed to accommodate its conductors. (L. 1887, ch. 716 ; *Matter of Subway Co.* v. *Monroe*, 85 App. Div. 542 ; *Matter of M. & B. E. Co.*; 47 Misc. Rep. 209.)

*Charles F. Brown, A. J. Dittenhoefer* and *David Gerber* for respondent. The claim that before the relator can open the streets in order to lay its wires it must secure a permit from the commissioner of water supply, gas and electricity is not an answer to this application to have space assigned. ( *W. S. E. Co.* v. *C. T. Co.*, 110 App. Div. 171 ; *People ex rel. N. Y. E. L. Co.* v. *Ellison*, 115 App. Div. 254 ; *Matter of N. Y. C. & H. R. R. R. Co.*, 77 N. Y. 248.) The objection that a franchise involving the performance of public duties is not assignable without the consent of the public authorities can be taken only by the state or by some duly authorized public officer. It cannot in this proceeding be invoked by the appellant. (*Starin* v. *Edson*, 112 N. Y. 206 ; *Rainey* v. *Laing*, 58 Barb. 453 ; *Nat. Bank* v. *Matthews*, 98 U. S. 621 ; *Nat. Bank* v. *Whitney*, 103 U. S. 99 ; *Smith* v. *Cornelius*, 41 W. Va. 59 ; *Ayers* v. *S. A. B. Co.*, L. R. [3 P. C.] 548 ; *B. G. L. Co.* v. *Claffy*, 151 N. Y. 24 ; *Commonwealth* v. *Ins. Co.*, 5 Mass. 230 ; *People* v. *U. Ins. Co.*, 15 Johns. 358 ; Thomp. on Corp. §§ 6030, 6033 ; Cook on Corp. §§ 632, 637.) The assignment made by the American Electrical Manufacturing Company to Frederick E. Townsend and the subsequent transfers of the franchise by which the title thereto was vested in the relator were not

void. Such transfers were valid between the parties to the respective contracts and transferred title to the relator, and the only legal defect that can possibly be claimed to exist in them is that they were voidable at the election of the state or the city. (*Parker* v. *E. G. & N. R. R. Co.*, 165 N. Y. 247; *Minor* v. *E. R. R. Co.*, 171 N. Y. 573; *Woodruff* v. *E. R. R. Co.*, 93 N. Y. 609; *Abbott* v. *J. R. R. Co.*, 80 N. Y. 27; *Bissell* v. *M. S. & N. I. R. R. Co.*, 22 N. Y. 258; *B. G. Co.* v. *Claffy*, 151 N. Y. 24; *Palmer* v. *C. H. Cemetery*, 122 N. Y. 435; *H. & G. Mfg. Co.* v. *H. & W. M. Co.*, 127 N. Y. 252; *Sistare* v. *Best*, 88 N. Y. 527; *Kent* v. *Q. M. Co.*, 78 N. Y. 159.)

O'BRIEN, J. This case presents a controversy between two corporations, which assumes the form of an application for a peremptory writ of mandamus. The application was granted and the order affirmed on appeal. There is no controversy about the facts, but there is in regard to the law governing the case. The corporate powers and duties of the defendant may be described in general terms without specific reference to the contract and legislative acts conferring upon it, as it is claimed, the powers which it is authorized and bound to exercise. It has authority, and it is its duty, to construct and maintain conduits for carrying wires for other corporations authorized to operate electrical conductors in the city of New York. In this discussion it will be called the Subway Company. It is its duty to lease and allot space to any corporation "having power to operate electrical conductors in any street, highway or public place in the city of New York that may apply for the same, including any company or corporation having, or which shall acquire, lawful power to manufacture, use or supply electricity." The statute also provides that mandamus may issue if the defendant should refuse or fail to perform the duties and obligations assumed by it. (Laws of 1887, ch. 716, section 7.)

The relator applied to the defendant with a request that it assign to it space in the subway for its electrical conductors.

The request was refused and hence the application for a writ of mandamus and the controversy presented by this appeal. The refusal was, mainly, on the ground that the relator was not authorized to operate electrical conductors in the city, and the origin and history of the relator and the franchise in question are very important in considering that question. In March, 1885, a corporation was created to operate electrical conductors in the city of New York which, for brevity, will be called the American Company. In May, 1887, the municipal authorities of the city granted to this corporation a franchise to locate and erect poles and hang wires and fixtures thereon and place, construct and use wires, conduits and conductors for electrical purposes in, over and under the streets. In 1888 this corporation, having accepted the franchise, assigned it to another corporation which, for brevity, will be called the Illuminating Company. The assignment was not made directly to that company, but to one Frederick E. Townsend, on April 18th, 1888. On the 29th of December, 1888, Townsend and two other persons filed a certificate by which the Illuminating Company was created; Townsend, obviously, being a mere conduit for transmission of the title of the American Company to the Illuminating Company, assigned the franchises to the new corporation. The defendant's contention is that this transaction constitutes a defective link in the relator's chain of title to the original franchise.

In 1889, the Illuminating Company commenced operations under the franchise so acquired by erecting poles and wires, and supplied to the public electric lights to the extent to which its facilities were equal, and continued to do so for more than a year and until its poles and wires were cut down and removed by the municipal authorities, in conjunction with a legislative board, possessing the power to cause all overhead wires to be removed and placed underground. It seems that at that time there were no subways for the reception of electrical conductors in that part of the city and the Illuminating Company became incapacitated from fully providing for its customers; but for a considerable time after its

poles were removed it continued to furnish lights in the building where its station was located and to other customers in the same block. The destruction of its property resulted in financial embarrassment, and in or about October, 1897, a judgment creditor instituted sequestration proceedings against the corporation and a receiver was appointed. After judgment, in November, 1897, the court directed the receiver to sell the franchise at public auction to the highest bidder, and the receiver thereupon sold it to one Minturn, which sale was duly confirmed by the court. In March, 1906, Minturn assigned it to the relator. The relator was incorporated in April, 1903, and was authorized to "manufacture, generate, transmit, furnish, supply and distribute electricity for light, heat, power or other purposes, and to light by electricity streets, avenues, parks, public and private buildings," etc., in the city of New York.

The defendant's principal contention is that the franchise granted by the municipal authorities to the original American Company has not passed to the relator, and that although it possesses certain powers under its certificate, it has no power to compel the defendant to allot to it space in the subway; not being a corporation authorized to operate electrical conductors.

It seems to me to be very clear that the transfer to Minturn under his purchase at the receiver's sale vested him with all the rights conferred by the original franchise. It cannot be disputed that a franchise to operate electrical conductors in the streets is property, taxable, alienable, subject to levy and sale under execution and to condemnation under the exercise of the power of eminent domain. (*People* v. *O'Brien*, 111 N. Y. 1.) So the defendant's objection must, we think, be confined to the transfer to Townsend, which was voluntary, though obviously made to transmit the rights acquired by the original company to another corporation about to be formed and which was, in fact, formed. The question, so far as concerns that transfer, is whether the original American Company had the power, by a written assignment, to vest in him the

property right to use the streets theretofore acquired from the municipality. But if it should be assumed that the right to this secondary franchise could not be transferred to an individual the defendant would still have to meet and over-come the objection that such a question could only be raised by the state or by the municipality. If the company has been guilty of an act *ultra vires* the state might perhaps proceed against it for a forfeiture of its franchise, or the city might, if the question was properly presented, avail itself of it; but it is not open to the defendant to raise the question in this proceeding. It can be of no concern to the defendant whether the relator, deriving its title as stated, or the original company applied for space in the subway. (*Starin* v. *Edson*, 112 N. Y. 206; *National Bank* v. *Matthews*, 98 U. S. 621; *National Bank* v. *Whitney*, 103 U. S. 99; *Ayers* v. *South Aus. Banking Co.*, L. R. [3 P. C.] 548; *Bath Gas Light Co.* v. *Claffy*, 151 N. Y. 24; *Commonwealth* v. *U. F. & M. Ins. Co.*, 5 Mass. 230.) In Thompson on Corporations (Sec. 6030) the principle is stated as follows: " Where a contract of a corporation has been executed by the parties to it it is not competent for a mere stranger to the contract to assail it and deprive the corporation of the advantage from it upon the ground that it was interdicted by the charter; and in general it may be said that one whose rights are not injuriously affected by reason of the fact that a corporation is acting in excess of its powers or beyond the warrant of law has no standing in court to complain of the same. These considerations bring us to the some-what new and growing doctrine that whether a corporation has acted in excess of its granted powers or in the face of an expressed or implied statutory prohibition is one which cannot be raised in litigation between it and a private party, or between private parties, but can only be raised by the state in a direct proceeding either to forfeit the franchise of the corporation or to subject it to punishment for doing the unlawful act." (Id. sec. 6033.) In this view of the case it is not necessary to go into any extensive examination of the legal question, so ably discussed by counsel, claiming that the cor-

poration to which the secondary franchise was granted was powerless to transfer its rights to an individual.

Considering the condition of the law in this state to-day, concerning the power of a corporation to transfer secondary franchises to an individual, I think it would not be wise to hold that such a transfer is void. The power to mortgage its franchise would seem necessarily to include the power to sell and dispose of it. The American Company, which procured the franchise, was incorporated under the General Manufacturing Act of 1848, which gave to corporations organized under it power to hold, purchase and *convey* real and personal property. The franchise being property it could be transferred through the execution of a mortgage; and I am unable to discover any reason why an individual could not purchase any personal property covered by the mortgage. Chapter 638, Laws of 1893, confers power on corporations, other than railroad corporations, to sell and convey their franchises to other corporations. While this statute does not apply to the assignment in question it indicates the public policy of the state. There can be no doubt that in some of the text books, as well as in some of the adjudged cases, expressions may be found which would seem to support the broad doctrine that such a transfer by a corporation to an individual is absolutely void and of no more force than if it had never been made. But whatever may have been the law originally on this question, such a doctrine has long been practically ignored in this state. The text books also recognize the fact that the drift of authority has been in the direction of sanctioning transfers such as was made to Townsend in this case. Many of the cases where the courts have recognized and sanctioned such transfers do not appear to have been based on any special statute authorizing it. As was said by Judge RUGER in *Woodruff* v. *Erie Ry. Co.* (93 N. Y. 609): "The transfer to an individual may not be expressly authorized by statute, but neither is it expressly prohibited, and the validity of such a transfer, granting the power to make it, is recognized by chapter 582 of the Laws of 1864. We have carefully examined the several

cases cited by the learned counsel for the respondent, in support of the claim that the lease to the plaintiff was contrary to public policy and, therefore, void, and do not think them applicable to the condition of the law as it exists in this State." Judge ANDREWS, in *Bath Gas Light Co.* v. *Claffy* (151 N. Y. 24), says : "We think the demands of public policy are fully satisfied by holding that, as to the public, the lease was void ; but that, as between the parties, so long as the occupation under' the lease continued, the lessee was bound to pay the rent and that its recovery may be enforced by action on the covenant." In that case the validity of a lease by one lighting company to another was under consideration.

We think that the assignment made by the American Company to Townsend, and the subsequent transfer of the franchise by him to another corporation, did not constitute a defense to the relator's application for the writ or its right to exercise the franchise. The most that can be claimed for the transaction is that it was voidable at the election of the state or city. ( *Woodruff* v. *Erie Ry. Co., supra ; Parker* v. *Elmira C. & N. R. R. Co.*, 165 N. Y. 274; *Minor* v. *Erie R. R. Co.*, 171 N. Y. 573 ; *People* v. *O'Brien, supra ; Bath Gas L. Co.* v. *Claffy, supra ; Palmer* v. *Cypress Hill Cemetery*, 122 N. Y. 435 ; *Holmes & G. Mfg. Co.* v. *H. & W. Metal Co.*, 127 N. Y. 252.)

The contention is also made in behalf of the defendant that the relator should, in the first instance, have applied to the municipal department having control of the supply of water, gas and electricity for permission to place its conductors in the subway, and hence that the application for the writ was premature. It is, no doubt, true that the relator must procure such a permit at some time ; otherwise the subway cannot be uncovered to receive the cables, or the street interfered with. It is not necessary, however, that the application for such a permit must precede the application to the defendant to assign space. Under the rules governing the municipal department having charge of the water supply, gas and electricity it is provided that " *when* applications have been made and space

24

assigned for conduits under ground the written consent of the commissioner must be obtained before any conductors are placed in the space so assigned." It would be useless for the relator to make an application for a permit to open the subway and interfere with the street until it was first determined whether it could use the subway for its conductors. Indeed, the commissioner, on refusal, could not be compelled to uncover the subway or interfere with the street, until the right involved in this application was first determined. (*People ex rel. N. Y. Electric Lines Co.* v. *Squire*, 107 N. Y. 593.)

There are some minor questions in the case which have been discussed by counsel, but they seem to have been correctly disposed of in the courts below and it is not needful to refer to them here. The legal obstacles urged against the relator have been examined and we think they are not tenable, or sufficient to defeat the relator's application.

The order appealed from should be affirmed, with costs.

EDWARD T. BARTLETT, HAIGHT, HISCOCK and CHASE, JJ. concur; CULLEN, Ch. J., and VANN, J., not voting.

Order affirmed.