UNITED STATES v. 25.4 ACRES OF LAND IN BOROUGH OF BROOKLYN, KINGS COUNTY, N. Y., et al.

SAME v. 53¼ ACRES OF LAND IN BOROUGH OF BROOKLYN, KINGS COUNTY, N. Y., et al.

Miscellaneous Nos. 586, 494.

District Court, E. D. New York.

April 10, 1946.

Harry T. Dolan, Sp. Ass't to Atty Gen., for the United States.

Ignatius M. Wilkinson, Corp. Counsel, of New York City (Alfred Jahr and Charles Bisberg, both of New York City, of counsel), for City of New York.

Cullen & Dykman, of Brooklyn, N. Y. (Jackson A. Dykman, Sigourney B. Olney, and Augustus J. Wheeler, all of Brooklyn, N. Y., of counsel), for Brooklyn Union Gas Co.

Beardsley & Taylor, of New York City (Thomas H. Beardsley, Reginald J. Snyder, and Earl G. Clarke, all of New York City of counsel), for Consolidated Edison Co. of N. Y.

BYERS, District Judge.

These proceedings are before the Court pursuant to an order of December 6, 1945, whereby they were consolidated for trial and decision, touching the claims of the Brooklyn Union Gas Company and the Consolidated Edison Company of New York for awards of damages asserted by reason of the taking, as alleged, by the petitioner-plaintiff, of the special franchises, easements and property of the respective claimants, being gas mains and services as to the Gas Company, and electrical ducts, cables and other fixtures as to the Edison Company, lying within the area of the property condemned in connection with the extension of the Brooklyn Navy Yard.

There are no contested issues of fact, decision being required only of questions of law arising from agreed premises.

As to the Gas Company, the mains were laid and maintained within certain streets, and the services, which were connections to the mains, led from the latter into the various buildings and structures to which gas was supplied for consumption.

As to the Edison Company, the conduits, ducts, cables, wires and services, etc., were also laid and maintained within streets embraced in the property condemned, with suitable connections to buildings and structures wherein electric current supplied by it was consumed:

The claimants and their respective predecessors built and maintained the said several appurtenances in the streets in question under franchises duly granted by the former City of Brooklyn, which were in full force and effect at the respective dates of the vesting of title pursuant to Declarations of Taking, namely, April 1, 1941, as to M–494 and September 19, 1941, as to M–586, and on such respective dates the said appurtenances were all in full and unrestricted operation. About 78 acres of land in all were embraced in the two proceedings.

The original petition (April 1, 1941) in M–494 described the property to be acquired in the following language:

"VI. That the estate in said land which the United States of America intends by this proceeding to acquire for the public hereinbefore stated is an estate in fee simple absolute *subject only to existing public utility easements, if any,* and intending to include all improvements thereon and all rights, easements and appurtenances thereto, except removable fixtures, which rights and easements may affect adjoining lands." (Italics supplied)

By an amended petition filed on behalf of the Government on September 18, 1941, paragraph VI of the original petition was modified to read as follows:

"VI. That the estate in said land which the United States of America intends by this proceeding to acquire for the public use hereinbefore stated is an estate in fee simple absolute and intending to include all improvements thereon and all rights, easements and appurtenances thereto, except removable fixtures, which rights and easements may affect adjoining lands, free from all covenants and restrictions whether public, private or legislative."

The amended petition in M–586 (September 18, 1941) reads:

"VI. That the estate in said land which the United States of America intends by this proceeding to acquire for the public use hereinbefore stated is an estate in fee simple absolute and intending to include all improvements thereon and all rights, easements and appurtenances thereto, except removable fixtures, free from all covenants and restrictions, which rights and easements may affect adjoining lands."

Thus the amended petitions were consistent with a governmental purpose to acquire the franchises of these claimants to the extent that they constituted an element of the property condemned, other than removable fixtures.

The questions which require decision seem to be:

1. What law governs this controversy?

2. What is the nature of the claimants' property which is the subject of these claims?

3. If it is real property, or an interest in real property, what is the measure of just compensation therefor?

[1] The answer to the first question is free from doubt; clearly the law of the State of New York controls, since the title to property is a matter of substantive law, see:

United States ex rel. T.V.A. v. Powelson, 319 U.S. 266, at page 279, 63 S.Ct. 1047, 1054, 87 L.Ed. 1390, where the Court says: "Though the meaning of 'property' as used in § 25 of the Act (T.V.A.Act) and in the Fifth Amendment is a federal question, it will normally obtain its content by reference to local law."

See also: United States v. Becktold Co., 8 Cir., 129 F.2d 473, at page 477; United States v. 19.86 acres of land in East St. Louis et al., 7 Cir., 141 F.2d 344, at page 346, 151 A.L.R. 1423.

Nor does the petitioner argue to the contrary, for in its reply brief the following occurs: "The State law is probably controlling on questions involving the status of property, but not on the question of just compensation * * *."

As to the nature of the claimants' property here involved, the answer is thought to be that, under the law of this State, the corporate franchises are to be

deemed an indefeasible interest in the land constituting streets at the times of vesting title pursuant to the Declarations of Taking. See: Ghee v. Northern Union Gas Co., 158 N.Y. 510, 53 N.E. 692; New York Telephone Co. v. State of N.Y., 169 App. Div. 310, 154 N.Y.S. 1059, affirmed 218 N.Y. 738, 113 N.E. 1061; Levy v. McClellan, 196 N.Y. 178, 89 N.E. 569.

The nature of such a franchise in New York is expounded in New York Electric Lines Co. v. Empire City Subway Co., 235 U.S. 179, 35 S.Ct. 72, 59 L.Ed. 184, Ann.Cas. 1915A, 906, a case in which the decision was affirmed, that the franchise had been abandoned. Seemingly the definition from the Ghee case supra [158 N.Y. 510, 53 N.E. 696] of "a perpetual and indefeasible interest in the land" is approved.

See also: Matter of Long Acre Electric L. & P. Co., 188 N.Y. 361, 80 N.E. 1101; Rochester & L. O. Water Co. v. City of Rochester, 176 N.Y. 36, at page 50, 68 N.E. 117.

Cases relied upon by the Government from other jurisdictions, whether in apparent conflict or not, do not aid in a determination of this cause.

The various New York statutory definitions of real property are to the same effect, but not all need be quoted:

Real Property Law, Consol. Laws, c. 50, § 2: "The terms 'real property' and 'lands' as used in the first eight articles of this chapter are co-extensive in meaning with lands, tenements and hereditaments."

Condemnation Law, Consol. Laws, c. 73, § 2: "* * * the term 'real property', any right, interest or easement therein or appurtenances thereto * * *."

General Construction Law, Consol. Laws, c. 22, § 40: "§ 40. Property, real. The term real property includes real estate, lands, tenements and hereditaments, corporeal and incorporeal."

See also: Lien Law, Consol. Laws, c. 33, § 2; Tax Law, Consol. Laws, c. 60, § 2, subd. 6; Administrative Code, City of New York, Title E, § E15—1.0, subd. 5; Title B, § B15—1.0, subd. 6; Public Authorities Law, Consol. Laws, c. 43-A, Ch. 870, Laws of 1939.

The contentions for the Government, to the effect that the appurtenances to which reference has been made are in fact but removable chattels, are not easy to follow, but perhaps invite comment:

It is said, for instance: "Both companies have indicated by the testimony submitted that the majority of its equipment and facilities was readily removable."

There was no numerical recapitulation to support this assertion, and it seems not to be in accord with the evidence. As to the mains and services of the Gas Company lying under the surface of the streets, there has been no removal whatever; as to the Edison Company's equipment, cables which could be withdrawn from the conduits, and transformers likewise mobile to a degree, removal has been accomplished under a stipulation that it was without prejudice to the legal rights involved. The respective figures shown in the testimony indicate that approximately 40% represents, in dollar value, the cables and transformers.

As to the Gas Company's mains and services, and the Edison Company's conduits, manholes, and transformer pits, doubtless subsurface demolition is possible, and the pipes and rubble could be carted away, but that reflection scarcely connotes ready removability.

The observation quoted fails to persuade additionally, since it overlooks the nature of these claims, which embraces alike the physical equipment and the franchise rights to maintain and operate it; the latter inhere in the appurtenances which have been taken, and the physical removal of those things would not affect their legal status, if the applicable law is presently understood.

Much of the argument of the Government is directed to the method of computing the claims for damages as presented by the claimants, and that subject will be considered presently.

It is said that the Gas Company is still using and maintaining a part of the equipment, i. e., one main and service to the Marine Hospital. If that is so, the Court does not understand the testimony. It is true that gas is being supplied to the hospital, but the main and service are the property of the Government, since they lie in the bed of Washington Avenue. If the Government chose to dismantle the main, which would of course be incongruous so long as the supply of gas to the hospital is desired, the Gas Company could do nothing but acquiesce. That is the legal situation.

Again it is argued that, had the City demolished the business structures on the

land taken in this proceeding and converted it into a park, a condition similar to the existing one would have been created, i. e., the "environmental pattern" would have changed. If that means that the streets and the claimants' properties therein could have been taken without consideration, it begs the very question which here requires decision. If it assumes that no electric current or gas would have been used in such a park property, it is speculative and unsupported by evidence touching a wholly imaginative state of affairs.

Continuing, it is observed that such a risk is necessarily undertaken by utility companies "when they gratuitously are permitted to lay their pipes, cables, lines and equipment in public streets". That observation seems not to have been based upon a reading of the franchises to the Edison Company; nor does it appear that the maintenance of these facilities has been gratuitous, so far as tax payments have been concerned.

The authorities cited to sustain the proposition that "The value of the fee simple entire must first be established and from such value so determined there must be allocated and distributed the respective values of the subordinate estates or interests therein" would require analysis if the franchises in question, and the appurtenances to which they attach, were embraced within damage parcels of private ownership abutting the streets, since the award in condemnation to the owner would be subject to deduction for subordinate interests therein.

The fact is that the property of these claimants is embraced within public streets for which the City of New York is not entitled to an award, there being no proof of the cost of providing necessary substitute facilities (United States v. Des Moines County, 8 Cir., 148 F.2d 448; Mayor and City Council of Baltimore v. United States, 4 Cir., 147 F.2d 786), from which it follows that there is nothing out of which to carve the value of a subordinate interest or estate. See also New York Telephone Co. v. State of NewYork, 169 App.Div. 310, at pages 319 and 322, 154 N.Y.S. 1059.

It is urged that the fact that the taxing authorities "may include such equipment and facilities among the property taxed as real property of utility companies would not change the legal status of such property for other purposes and would in no way be binding upon the United States of America."

If this means that the taxing authorities of the City of New York and the State of New York are not required to tax as real property that which the statutes of the State so define—namely, franchises—it is palpably mistaken; and if it means that the United States of America is not required to treat as an interest in real property that which the statutory and case law of New York so denominate, then this Court entertains a mistaken view of the principles necessarily controlling herein.

Again, it is said that if "the claimants found themselves required to create new facilities or relocate old in order to continue to service its customers in the neighborhood of the property taken, we would then be presented with an entirely different problem and an entirely different concept of the right of recovery and just compensation would apply".

This exposes the real difficulty of the case, namely, the question of just compensation, which will be discussed presently.

Relocation if required would in no wise alter the essential nature of the problem, but a convenient formula would become available to influence the amount of the award.

The Government seems to argue, although perhaps its position is not understood, that because the City could in the exercise of its police power (Re Idlewild, June 20, 1942 [1]) order the relocation of "a small part of its street equipment (gas mains?) whenever public convenience and security make it necessary to alter street lines or grades", there results herein no taking of an interest in real estate. If this means that the issues should be decided as though the City *had* ordered a relocation, manifestly it is contrary to the facts. If it means that, because the City *could have* ordered relocation, there is no basis for the claimants' assertion that included in this taking are the interests in real estate that attach to their respective mains, conduits and the like, it is contradicted by so much of the opinion in the same case which states: "There is no doubt that if the City were to appropriate the real property of the gas company, or its franchise, it could only do so by making proper compensation *. * *.".

---

[1] No opinion for publication.

To conclude this branch of the discussion, it seems clear that the Government has taken in this proceeding, in connection with the facilities which have been mentioned, an interest in real estate, namely, the franchises of the respective companies, to the extent that they adhere to the mains, conduits, etc.

In Levy v. McClellan, 196 N.Y. 178, 89 N.E. 569, the question involved was whether in determining the City's debt limit, special franchises were to be considered "real estate". It is said (at pages 193, 194 of 196 N.Y., at page 571 of 89 N.E.) :

"These special franchises are rights or privileges of a public nature, the exercise of which is permitted under grants from the state to corporations, and the Legislature, in the general tax law, has classified them as real estate. See Laws 1896, p. 796, c. 908, § 2, subd. 3, as amended by Laws 1899, p. 1589, c. 712. In the nature of incorporeal hereditaments at common law franchises partook of the nature of realty, and these special franchises are *inseparable* from real property in their enjoyment. They fall necessarily into that one of the two general divisions of property made by the statute which is described as real estate. Washburn on Real Property (6th Ed.), § 1185; 1 Rev.St. (1st Ed.) 750, § 10; Real Property Law, (Laws 1896, p. 559 chap. 547) § 1.

"There was nothing decided in People ex rel. Metropolitan Street Ry. Co. v. State Board of Tax Commissioners, 174 N.Y. 417, 67 N.E. 69, 63 L.R.A. 884, 105 Am.St.Rep. 674, which is opposed to this view. These franchises could never be classified as *personal property* * * *." (Italics supplied)

There can be no distinction between the franchise and the means of exercising it. The inseparability of such franchises and the property used to carry out the franchise is recognized by the Court of Appeals in several cases. Syracuse Water Co. v. City of Syracuse, 116 N.Y. 167, 22 N.E. 381, 5 L.R.A. 546; People ex rel. Met. Street Ry. Co. v. Tax Comm., 174 N.Y. 417, 67 N.E. 69, 63 L.R.A. 884, 105 Am.St.Rep. 674, affirmed 199 U.S. 1, 25 S.Ct. 705, 50 L.Ed. 65, 4 Ann.Cas. 381; New York Tel. Co. v. State of New York, 169 App.Div. 310, 154 N.Y.S. 1059, affirmed 218 N.Y. 738, 113 N.E. 1061; Matter of City of New York, E. 42nd St. Elevated R. R. Structures, 265 N.Y. 170, at page 182, 192 N.E. 188.

It remains to determine the principle of just compensation to be applied. This is the only question of real difficulty that is presented, since the legal theories relied upon to sustain the claimants' position admit of but little serious question.

■ Concededly the rule of fair market value of the property taken cannot apply, for it is impossible to conjure up the proverbial figure of a willing buyer.

■ The claimants assert that recourse therefore must be had to the rule of reproduction costs of the physical facilities, less depreciation. That rule is equally unavailing, as I shall try to show:

If reproduction were to be resorted to, we should have to deal with nothing but what we have now, namely, mains, conduits and the like, buried in the ground and incapable of recovery except at a prohibitive cost.

The reproduction cost of a building or other structure under appropriate circumstances would present the picture of a property capable of operation and having a utilitarian aspect, but no such condition could possibly attend the reproduction of these facilities, having in mind their legal status the instant that title vested in the Government. In other words, why talk about the reproduction costs of that which it would be utterly idle to reproduce?

Moreover, such reproduction costs would not include the interest in real estate which has been discussed and which is essential to a proper understanding of the true constituency of the claimants' properties; lacking the franchise aspect of the controversy, there would be no legal substance to the claimants' case.

If the foregoing is true, it results that resort must be had to some other theory of compensation, even though novel so far as the reported cases go, and an opportunity given to the claimants to amend their claims if need be, and to prepare and offer new and different evidence to support their case, if they be so advised.

I should suppose that a rational approach to the problem would start with the concept that what has been taken is not only physical equipment and the franchises, but the earning power which attached thereto. The parallel of course is incomplete and only roughly apposite, but when an individual has suffered a permanent disability, his lack of earning capacity occasioned thereby is ordinarily an element of compensation.

338

In such circumstances, resort may be had to the mortality tables to supply an important factor in the necessary computation, and we have no such assistance in this case. It may be necessary even to suggest a reasonable number of years to support a comparable computation here; it may be difficult also to allocate both maintenance costs and income or earnings, to the facilities involved. It would seem, however, that these matters could be the subject of informed testimony, if the suggestion is deemed worthy of consideration.

It is to be remembered that here not even mere scrap value could be deemed in part compensatory to the claimants as in Matter of the City of New York, E. 42nd St. Elevated R. R. Structures, 265 N.Y. 170, at page 182, supra, 192 N.E. 188, since the testimony precludes the adoption of even so minimum a standard, and these franchises have not been rescinded.

If the claimants are not prepared to reopen the case upon some such theory as has been suggested, I am reluctantly compelled to conclude that they have not demonstrated any applicable basis of compensation that the Court can adopt, and that their claims must be denied for that reason.

Settle order.