JEFFERSON M. LEVY, Appellant, v. GEORGE B. McCLELLAN et al., Constituting the Board of Estimate and Apportionment of the City of New York, Respondents.

DAVID MEYER, Appellant, v. GEORGE B. McCLELLAN, as Mayor of the City of New York, et al., Respondents.

FLEISCHMANN REALTY AND CONSTRUCTION COMPANY, Appellant, v. GEORGE B. McCLELLAN et al., Constituting the Board of Estimate and Apportionment of the City of New York, et al., Respondents.

New York (city of) — limit of indebtedness under State Constitution (art. 8, § 10) — application of constitutional provisions — rules for computing indebtedness.

In an action to restrain the authorities of the city of New York from committing the city to certain proposed contracts for the construction of public improvements upon the ground that thereby the provisions of the Constitution of the state contained in section 10 of article 8, which prohibits any city from becoming indebted to an amount which shall exceed ten per cent of the assessed valuation of its real estate would be violated, the following propositions were held:

In computing the indebtedness of the city of New York this provision of the Constitution must be deemed to comprehend within the term "real estate" all properties which the statute makes taxable as such. At common law franchises partook of the nature of realty and by the Tax Law special franchises are classified as real estate; hence they are properly included as part of the real estate which is valued for assessment purposes.

In ascertaining the limit of the city's capacity to become further indebted, the constitutional provision may properly be read as contemplating a permanent or funded debt to be paid by future taxation, and a temporary indebtedness for current expenses to be liquidated from taxes levied for the year.

In ascertaining the limit of the city's capacity to become further indebted, there should not be included in the computation revenue bonds, issued under section 187 of the city charter to meet expenditures under the appropriations for each current year and to be redeemed out of the proceeds of the tax levy, when such bonds have not been outstanding for more than five years since their issue, nor should such computation include revenue bonds issued under said section for purposes other than to meet expenditures under the appropriations for each current year and which are redeemable out of the tax levy for the year next succeding the year of their issue.

Assessment bonds issued to pay the cost of local improvements are issued upon the faith and credit of the city alone, when due are payable directly, are the absolute and unqualified obligations of the city and the lien of the city upon the property can be regarded only as a general asset.

The general fund bonds issued under section 222 of the charter are to be classified with the city's corporate stock, as the faith and credit of the city are pledged for the fulfillment of their obligation. When held by the sinking fund they are the subject of deduction, in the computation of the permanent debt, with other sinking fund holdings.

The amount of the "land liability" of the city which includes the amount owing to the owners of private property taken for public use is to be included in a permanent debt. The owners are entitled to recover the value of the land, with interest, from the city which has become vested with the title and possession, on proceedings taken by the municipal authorities.

Bonds issued by the counties prior to the consolidation are not to be included in the computation of the city's indebtedness.

Bonds issued to provide for the supply of water after January 1, 1904, are not to be included in ascertaining the power of the city to become indebted, but this deduction does not include such bonds as were used after that date to pay debts incurred prior thereto.

In ascertaining the city's permanent debt there should be deducted from its total indebtedness the following: holdings of bonds by certain of the sinking funds, other than those not included in computing the city's indebtedness; cash in the sinking funds; the annual installment included in the budget for the current year required to be paid into the sinking fund; bonds payable the current year, provision for which was made in the budget of the year; cash in the treasury from unallotted proceeds of bonds and cash on hand applicable to the discharge of contract liabilities.

Since the purpose of the constitutional provision in question was to prevent municipalities from improvidently contracting debts for other than ordinary current expenses of administration and to restrict their borrowing capacity so as to prevent extravagance in city expenditure,

" existing indebtedness" must, in ascertaining the margin of the city's constitutional debt limit, be regarded as including the city's liability upon contracts for public improvements under section 149 of the charter, which is intended to be met from an issue of bonds.

Unliquidated and disputed claims pending against the city should not be included as a part of the city's existing indebtedness. So far as they may be ultimately reduced to judgment, they will be payable from the proceeds of special revenue bonds, which do not enter into the constitutional purview of an existing indebtedness.

The availability, however, as an offset to the general indebtedness of the city, of water bonds issued by the city since the new Constitution and held in the sinking funds, depends upon the particular sinking fund in which such bonds are held, and not on the character of the bond. If they or other bonds are held in the special sinking fund created by section 208 of the charter, or in any sinking fund which is by law especially created to discharge indebtedness which, under the Constitution, is not to be reckoned in ascertaining the city's debt, then they cannot be treated as an offset against the general city debt; otherwise, they should be so considered. *Bank for Savings* v. *Grace*, 102 N. Y. 313, distinguished.

*Levy* v. *McClellan*, 132 App. Div. 913, affirmed.

(Argued June 2, 1909; decided October 22, 1909.)

Appeal, in each of the above-entitled actions, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 22, 1909, which affirmed an order of Special Term denying a motion from an injunction *pendente lite.*

The following questions were certified :

" I.— Are special franchises, as defined in subdivision 3 of section 1 of the Tax Law, as amended (Laws of 1896, chapter 908, as amended by chapter 712 of the Laws of 1899), 'real estate' within the terms of article VIII, section 10, of the Constitution, prohibiting the incurring of indebtedness by a city beyond ten per centum of the assessed valuation of the real estate of said city, subject to taxation as it appeared by the assessment rolls of said city on the last assessment for State taxes prior to the incurring of such indebtedness in said section mentioned ?

" Should the obligations or liabilities for the purposes hereinafter set forth in questions II to XXV, inclusive, be con-

sidered as ' indebtedness' of The City of New York under the provisions of article VIII, section 10, of the Constitution in reference to the incurring of indebtedness above an amount ' which, including existing indebtedness, shall not exceed ten per centum of the assessed value of real estate of said city subject to taxation as it appeared by the assessment rolls of said city on the last assessment for State and County taxes prior to the incurring of such obligations or liabilities?'

"II.— For obligations incurred for the acquisition of real estate from which The City of New York derives revenue.

"III.— Obligations incurred for the acquisition of real estate by the City, the revenue from which received by the City is sufficient to pay interest upon the obligations issued to procure the money for the purchase thereof, and also to paying off at maturity the obligations issued for the purchase of said real estate.

"IV.— Obligations incurred for the acquisition of real estate from which The City of New York does not derive revenue.

"V.— Obligations to pay to the owners of land under condemnation, title to which has vested in the City, the value of the land so vested in the City, but which value has not yet been ascertained by the Commissioners.

"VI.— Interest on the estimated value of land, title to which has vested in the City, where no final award has been made.

"VII.— Interest on the unpaid amount of awards for the condemnation of land, title to which has vested in the City, but which awards have not been paid.

"VIII.— Expense of the acquisition of docks, wharves, piers, bulkheads and other water-front property by The City of New York which produce revenue to said City.

"IX.— Expense of the acquisition of docks, wharves, piers, bulkheads and other water-front property which produce a revenue sufficient to pay the interest upon the cost of said property.

"X.— Expense of improvement, including construction

and building of docks, wharves, piers, bulkheads and other water-front property, which produce a revenue.

" XI.— The bonds or obligations issued by the City under the Rapid Transit Act, as amended, for the construction of rapid transit railways and their appurtenances, the lessees of which railways pay to the City an amount sufficient to pay the interest on such bonds, and also an amount sufficient to pay the principal of said bonds at maturity.

" XII.— Special revenue bonds issued under the provisions of section 187 of the Charter of the City of New York, and which are issued in one year to be redeemed out of the tax levy for the year next succeeding the date of their issue.

" XIII.— Special revenue bonds of The City of New York issued in 1907, whose redemption was provided for in the Budget of The City of New York for 1908.

" XIV.— Special revenue bonds of The City of New York issued in 1908, prior to June 30 of said year, the provision for the redemption of which was made in the Budget for 1909.

" XV.— Revenue bonds other than those issued in anticipation of the collection of taxes of the year in which they were issued.

" XVI.— Bonds of The City of New York payable in 1908, provision for the payment of which was made in the Budget of 1908.

" XVII.— Assessment bonds of The City of New York.

" XVIII.— General fund bonds of The City of New York.

" XIX.— The gross sum required to be paid, according to the terms of contracts, for work and labor to be done or materials to be furnished under contracts for public improvements of said City of New York to be paid for as such work is performed and the materials furnished from time to time from the proceeds of bonds.

" XX.— Judgments for the payment of which provision was made under section 188, subdivision 3, of the Greater New York Charter.

" XXI.— Judgments for which no provision for payment

of which has been made under section 188, subdivision 3, of the Greater New York Charter.

" XXII.— Judgments which, under the provisions of section 188, subdivision 3, of the Greater New York Charter, are chargeable against the various counties within said city.

" XXIII.— Expenditures under orders issued pursuant to the provisions of section 419 of the Greater New York Charter made by City departments without public advertisement or letting, for work or supplies not exceeding in value the sum of one thousand dollars, which orders are payable from the sale of bonds.

" XXIV.— Claims arising against The City of New York *ex contractu,* not reduced to judgment.

" XXV.— Claims arising against The City of New York *ex delicto,* not reduced to judgment.

" XXVI.— Does the amount payable on contracts for work and labor to be performed or materials to be furnished under contracts for public improvements by said City of New York, to be paid for as such work is performed and materials furnished from time to time, become an indebtedness of the City of New York within the constitutional provision of Article VIII, section 10, of the Constitution, at the time of the execution of the contract by the head of the appropriate department of the City, and filed with the Comptroller for registration ?

" XXVII.— Does the amount payable upon contract liability for work and labor to be performed or materials to be furnished under contracts for public improvements by said City of New York, to be paid for as such work is performed or the materials furnished from time to time from the proceeds of bonds, become an indebtedness of said City within the provisions of Article VIII, section 10 of the Constitution of the State, at the time when the Comptroller of said City endorses thereon his certificate as required by section 149 of the Greater New York Charter, that there remains a balance of the appropriation or fund applicable thereto

sufficient to pay the estimated expense of executing such contract as certified by the officer making the same?

"XXVIII.— Should property of The City of New York, such as docks, wharves and market places, which are leased and rented to private individuals and corporations, and from which revenue is derived by the City, be included in the assessed valuation of the real estate of such City, subject to taxation, for the purpose of determining the debt incurring capacity of such City, within the terms of Article VIII, section 10, of the Constitution, or is the same held for a public use within the meaning of section 3 of Article I of the Tax Law, as amended (Laws 1896)?

"XXIX.— Should bonds, authorized by chapter 208 of the Laws of 1906, to be issued to provide for deficiencies in taxes of the year 1904 and prior thereto, deemed uncollectible on January 1, 1905, but not actually issued, be considered an indebtedness under the constitutional provision?

"XXX.— Does the amount payable on contract liability for work and labor to be performed and materials to be furnished under contracts for public improvements of said City of New York, to be paid for as such work is performed or materials furnished from time to time from the proceeds of bonds, become an indebtedness of The City of New York within the provisions of, Article VIII, section 10, of the Constitution of the State, when such contract has been executed by the head of the appropriate department and certified by the Comptroller under section 149 of the Greater New York Charter when the work thereunder shall have been actually performed or the materials required thereby shall have been furnished?

" Should there be deducted from the amounts of the indebtedness of said City of New York, ascertained under Article VIII, section 10, of the State Constitution, the following items :

"XXXI.— The holdings of the various sinking funds of corporate stock other than bonds not included in computing the City indebtedness under the Constitution.

" XXXII.— The holdings of the various sinking funds of bonds not included in computing the City indebtedness under the Constitution.

" XXXIII.— The holdings of the various sinking funds of cash.

" XXXIV.— Should bonds which are not to be considered as 'indebtedness' under the Constitution, and which are held in a sinking fund created for the redemption of indebtedness which is within the constitutional provision, be deducted in ascertaining the borrowing capacity of the City ?

" XXXV.— The holdings of the various sinking funds of securities, other than those issued by the City.

" XXXVI.— The annual installments included in the Budget for 1908 and required to be paid into the Sinking Fund which is unpaid at the time of computing the City's indebtedness.

" XXXVII.— General fund bonds of The City of New York held in the Sinking Fund for the Redemption of the City Debt, No. 1.

" XXXVIII.— Cash on hand in funds against which no contracts are registered by the Comptroller.

" XXXIX.— Cash on hand in funds against which contracts are registered by the Comptroller.

" XL.— Bonds issued to pay debts incurred for the supply of water since January 1, 1904.

" XLI.— Unallotted proceeds of bonds of the City of New York issued to pay debts incurred, which are included in computing the indebtedness of the City of New York under the constitutional provision.

" XLII.— Unallotted proceeds of bonds of the City of New York issued to pay debts incurred, not included in computing the indebtedness of the City under the constitutional provision.

" XLIII.— Should bonds outstanding June 30, 1908, maturing between June 30, 1908, and January 1, 1909, payable not from sinking funds, but directly from the City's taxes, and for the redemption of which an appropriation was contained in the Budget of 1908, but which have not act-

ually been redeemed, be deducted from the indebtedness of the City in order to determine its borrowing capacity within the meaning of the constitutional provision ? ”

The facts, so far as material, are stated in the opinion.

*Jeremiah T. Mahoney* and *Robert F. Wagner* for Jefferson M. Levy, appellant. The amount which the city of New York is under obligation at any time to pay for lands for public purposes, title to which has vested in the city, must be included as indebtedness within the purview of the Constitution. (*Matter of City of New York,* 118 App. Div. 224 ; *Forster* v. *Scott,* 136 N. Y. 577.) All “ revenue bonds ” issued in anticipation of the collection of taxes for amounts actually contained, or to be contained, in the taxes for the year, when such certificates or revenue bonds are issued and payable out of such taxes, should not be included in ascertaining the power of the city to become further indebted. All revenue bonds issued against and payable from the collection of taxes of years other than the year in which they were issued, must be included in ascertaining the power of the city to become further indebted. All certificates of indebtedness or revenue bonds issued in anticipation of the collection of taxes which were not retired within five years from the date of issue, must be included in ascertaining the power of the city to become further indebted. (*Gibson* v. *Knapp,* 21 Misc. Rep. 499.) “ Assessment bonds ” must be included as indebtedness in determining the constitutional borrowing capacity of the city. (1 Abb. on Mun. Corp. § 152; *Quill* v. *Indianapolis,* 124 Ind. 292 ; *Kelly* v. *Minneapolis,* 63 Minn. 125 ; *Kronsbein* v. *Rochester,* 76 App. Div. 494; *Fowler* v. *Superior,* 85 Wis. 411.) The obligation incurred by the city of New York upon entering into a contract (excluding all contract liability incurred for the purposes of water supply since January 1, 1904) for public improvements, for the payment of which provision has been made, not by an appropriation of current revenues, but by an authorization of the issue of city bonds (other than revenue bonds), is an indebtedness within the meaning of article 8,

section 10, of the State Constitution. (*Lynch* v. *Mayor*, etc., 2 App. Div. 213; *Litchfield* v. *Ballou*, 114 U. S. 190; *Lake County* v. *Rollins*, 130 U. S. 662; *Doon Township* v. *Cummins*, 142 U. S. 366; *McRae* v. *County of Cochise*, 44 Pac. Rep. 299; *Wallace* v. *San Jose*, 29 Cal. 180; *People ex rel. Seeley* v. *May*, 9 Col. 80; *Hudson* v. *Marietta*, 64 Ga. 286; *Prince* v. *Quincy*, 105 Ill. 138; *Prince* v. *Quincy*, 128 Ill. 443; *Sackett* v. *New Albany*, 88 Ind. 473.) Judgments for the payment of which provision was made under section 188, subdivision 3, of the Greater New York charter, and judgments for which no provision for the payment of which has been made under section 188, subdivision 3, of the Greater New York charter, and judgments which, under the provisions of section 188, subdivision 3, of the Greater New York charter, are chargeable against the various counties within said city, are all indebtedness within the purview of the Constitution. (*Stone* v. *Chicago*, 207 Ill. 492.) The proceeds of bonds issued to pay debts incurred, which are included in arriving at the indebtedness of the city under the Constitution, which proceeds have not been apportioned, allotted or transferred to the various accounts, on account of which said bonds were authorized to be sold, should be deducted from the gross indebtedness of the city in ascertaining the borrowing capacity of the city. (*Kronsbein* v. *City of Rochester*, 76 App. Div. 494; *Powell* v. *City of Madison*, 107 Ind. 106; *City of Poughkeepsie* v. *Quintard*, 136 N. Y. 275; *A. L. Ins. Co.* v. *Lyon Co.*, 44 Fed. Rep. 329.)

*Alonzo G. McLaughlin* and *Matthew W. Wood* for David Meyer, appellant. The learned referee properly accepted as "real estate" for the purpose of figuring the constitutional debt incurring capacity of the city of New York "special franchises" assessed and valued as real estate in the assessment roll of 1907. (Gerard on Titles [4th ed.], 19, 100; Joyce on Franchises, § 26; *Kronsbein* v. *City of Rochester*, 76 App. Div. 494; *People* v. *Tax Comrs.*, 174 N. Y. 417; *People* v. *O'Brien*, 111 N. Y. 1; *People* v. *Cassidy*, 46 N. Y. 46;

*Smith* v. *Mayor, etc.,* 68 N. Y. 552.) Assessed value of the real property of the city of New York rented to private individuals and corporations should be added to the assessed value of real estate for the purpose of determining the constitutional borrowing capacity of the said city. (*People ex rel. Dunkirk* v. *Batchellor,* 53 N. Y. 128; *U. S.* v. *R. R. Co.,* 17 Wall. 322; Cooley on Taxn. 173; Dillon on Mun. Corp. 571.) Contract obligations for public improvements are not to be deemed present debts but a contract by which a future debt may be created and should not, therefore, figure in ascertaining the city's debt limit. (*Walla Walla City* v. *Walla Walla Water Co.,* 172 U. S. 1; *V. W. W. Co.* v. *Vicksburg,* 185 U. S. 65; Dillon on Mun. Corp. § 210; Abbott on Mun. Corp. § 152; *Higgins* v. *City of San Diego,* 45 Pac. Rep. 824; *Crowder* v. *Town of Sullivan,* 128 Ind. 486; *Fowland* v. *Town of Frankton,* 142 Ind. 546; *Grant* v. *City of Davenport,* 3 Iowa, 396; *Board* v. *City of Hopkinsville,* 95 Ky. 239; *Niles Water Works* v. *City of Niles,* 59 Mich. 311; *Saleno* v. *City of Neosho,* 127 Mo. 627; *L. W. & E. L. Co.* v. *City of Lamar,* 128 Mo. 188; *Davenport* v. *Kleinschmidt,* 6 Mont. 502.) Where title to lands under condemnation has vested in the city and the value of the land so vested has not been fixed by the commissioners the claim of the owner of the land is for damages *ex delicto* and until fixed and liquidated is not a debt within the meaning of the constitutional provision. (*Wade* v. *Oakmont Boro,* 165 Penn. St. 479; *Appeal of City of Erie,* 91 Penn. St. 398; Dillon on Mun. Corp. § 587c; Mills on Em. Domain, 30; Lewis on Em. Domain, ch. V.) City bonds which have been purchased with the funds of and are held by the city's sinking funds are no longer considered " existing indebtedness " in determining the right of the city to become further indebted. (*Bank for Savings* v. *Grace,* 102 N. Y. 313.) The proper rule is that cash in the sinking fund is a proper deduction in determining the limit of borrowing capacity of a city under the Constitution. (*Stone* v. *Chicago,* 207 Ill. 492; *Kelly* v. *Minneapolis,* 63 Minn. 25; *Kronsbein* v. *Rochester,* 76 App. Div. 494; *Williamson* v.

*Aldrich*, 108 N. W. Rep. 1063 ; *Bank for Savings* v. *Grace*, 102 N. Y. 313 ; *Rice* v. *City of Milwaukee*, 100 Wis. 516.) Assessment bonds should be deducted in determining the debt limit. (*Sackett* v. *City of New Albany*, 88 Ind. 473 ; *Brashear* v. *City of Madison*, 142 Ind. 645 ; *Quill* v. *City of Indianapolis*, 124 Ind. 292 ; *Strieb* v. *Cox*, 111 Ind. 299 ; *Davis* v. *Des Moines*, 71 Iowa, 500 ; *Grant* v. *Davenport*, 36 Iowa, 396 ; *Addyston Co.* v. *Corry*, 197 Pa. St. 41 ; *Gable* v. *Altoona*, 200 Pa. St. 15 ; *Commissioners* v. *Jackson*, 165 Ill. 17 ; *Board* v. *Reeves*, 143 Ind. 467 ; *Kelly* v. *City of Minneapolis*, 63 Minn. 125.)

*Daniel P. Hays* and *B. S. Horkheimer* for Fleischmann Realty and Construction Company, appellant. Special franchises, as defined in subdivision 3, section 1 of the Tax Law, as amended by the Laws of 1896, chapter 908, further amended by chapter 712, Laws of 1899, are not " real estate " within the terms of article 8, section 10, of the Constitution. (Cooley on Const. Lim. [7th ed.] 92 ; *Gibbons* v. *Ogden*, 9 Wheat. 1; *Settle* v. *Van Evera*, 49 N. Y. 281 ; *People* v. *N. Y. C. R. R. Co.*, 34 Barb. 128 ; 24 N. Y. 485 ; *People ex rel. Williams* v. *Dayton*, 55 N. Y. 367 ; *People ex rel. Lent* v. *Carr*, 100 N. Y. 242 ; *Matter of Silkman*, 88 App. Div. 102 ; *Rhode Island* v. *Massachusetts*, 12 Pet. 657 ; *Nellis* v. *Munson*, 108 N. Y. 458 ; *People ex rel. P. R. R. Co.* v. *Tax Comrs.*, 104 N. Y. 240.) Assessment bonds constitute an indebtedness under the constitutional provision. (*Fowler* v. *Superior*, 85 Wis. 41 ; 1 Abb. Mun. Corp. § 152.) When the city has entered into a contract for municipal improvements — which contract has been certified by the comptroller in accordance with section 149 of the Greater New York charter — the total amount which the city obligates itself to pay is an " indebtedness " within the meaning of the constitutional provision. (*Rodman* v. *Munson*, 13 Barb. 197 ; *Matter of R. T. R. R. Comrs.*, 5 App. Div. 290 ; *Latimer* v. *Veeder*, 20 App. Div. 418 ; *Matter of R. T. Comrs.*, 23 App. Div. 472 ; *Bank of Savings* v. *Grace*,

102 N. Y. 318; *Spillman* v. *City of Parkersburg*, 35 W. Va. 606; *Culbertson* v. *City of Fulton*, 127 Ill. 30; *Windsor* v *City of Des Moines*, 81 N. E. Rep. 476; *Schnell* v. *City of Rock Island*, 232 Ill. 89; *Village of East Moline* v. *Pope*, 224 Ill. 386; *Ramsey* v. *Shelbyville*, 83 S. W. Rep. 116.) Property of the city of New York, such as docks, wharves and market places, from which the city derives a revenue from private individuals and corporations, should be included in the assessed valuation of such property subject to taxation, for the purpose of determining the borrowing capacity of the city within the meaning of the Constitution. (*People ex rel. Mayor, etc.,* v. *Bd. of Assessors*, 111 N. Y. 505; *City of Rochester* v. *Brush*, 80 N. Y. 302.)

*Francis K. Pendleton, Corporation Counsel* (*Theodore Connoly* and *Lewis H. Hahlo* of counsel), for respondent. Special franchises are properly assessed as real estate. (2 Cooley Blackstone, 21; Washb. on Real Prop. [6th ed.] § 1185; Gerard on Titles of Real Estate [4th ed.], 19, 100; Joyce on Franchises, § 26; 1 Reeves on Real Prop. 142; *People ex rel. M. S. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 439; 199 U. S. 1; *Kronsbein* v. *City of Rochester*, 76 App. Div. 494.) Interest on the estimated value of land, title of which has vested in the city, where no final award has been made in condemnation proceedings, and interest on the unpaid amount of awards for the condemnation of land, title to which has vested in the city, but which awards have not been paid, is not an indebtedness within the prohibition. (*Gibbons* v. *M., etc., Ry. Co.*, 36 Ala. 410; *Blanchard* v. *Benton*, 109 Ill. App. 569; *Jones* v. *Hurlbut*, 13 Neb. 125; *Eppig* v. *City of Columbus*, 117 Ga. 263; Gray on Limitations, § 2120.) Special revenue bonds issued in one year to be redeemed out of taxes levied for the next succeeding year; and special revenue bonds issued in 1907, whose redemption was provided for in the budget of 1908, do not constitute an indebtedness within the constitutional provision. (*State Warrants*, 6 S. D 518.) Special revenue bonds issued

in 1908 prior to June 30, the provision for the redemption of which was made in the budget for 1909 should not be included in the computation of indebtedness. (*Kronsbein* v. *City of Rochester*, 76 App. Div. 494.) Revenue bonds other than those issued in anticipation of the collection of taxes of the year in which they were issued should not be included in the computation of indebtedness. (*State Warrants*, 6 S. D. 518.) Outstanding contracts should not be considered an indebtedness within the purview of the constitutional provision. (*Weston* v. *City of Syracuse*, 17 N. Y. 110; *Smith* v. *City of Newburgh*, 77 N. Y. 130; *Walla Walla City* v. *W. W. W. Co.*, 172 U. S. 1; *V. W. W. Co.* v. *Vicksburg*, 185 U. S. 65; *Herman* v. *City of New York*, 114 N. Y. Supp. 1107; *McBean* v. *City of Fresno*, 112 Cal. 159; *Higgins* v. *City of San Diego*, 45 Pac. Rep. 824; *Crowder* v. *Town of Sullivan*, 128 Ind. 486; *Fowland* v. *Town of Frankton*, 142 Ind. 546; *Grant* v. *City of Davenport*, 3 Iowa, 396; *Board* v. *City of Hopkinsville*, 95 Ky. 239.) Claims arising against the city of New York either *ex contractu* or *ex delicto* not reduced to judgment should not be considered existing indebtedness. (Gray on Lim. of Taxing Power, § 2091; *A. Nat. Bank* v. *Lyon Co.*, 81 Fed. Rep. 127.)

GRAY, J. The above three actions are brought by taxpayers and, in each, the plaintiffs demand that the municipal authorities of the city of New York be restrained from committing the city to certain proposed contracts for the construction of a subway in Brooklyn and for various other public improvements, and from issuing corporate stock therefor; upon the ground that thereby, the provisions of the Constitution of the state, with respect to the limitation of the city indebtedness, will be violated. Upon an application for a preliminary injunction, an order of reference was made, which was extended to each action, whereby the referee was required to take proof of, and to report with his opinion, the amount in which the city was indebted for any purpose, or in any manner, on June 30th, 1908; to take proof as to its obliga-

tions and to classify such indebtedness, to the end that the court may be "enabled to determine thereupon the amount of existing indebtedness coming under constitutional limitations". The learned referee, with great care and elaborateness, complied with the order and, in his report, he has discussed, with marked ability, the important questions presented. Upon the coming in of his report, the applications for an injunction were denied and, on appeal to the Appellate Division, in the first department, the orders of the Special Term were affirmed. Leave was given to the plaintiff to appeal to this court and a great number of questions have been certified for our review.

The constitutional provisions, which are brought into question, are contained in section 10 of article VIII of the State Constitution, and they read as follows : "No county or city shall be allowed to become indebted for any purpose or in any manner to an amount which, including existing indebtedness, shall exceed ten per centum of the assessed valuation of the real estate of such county or city subject to taxation, as it appeared by the assessment rolls of said county or city on the last assessment for state or county taxes prior to the incurring of such indebtedness ; and all indebtedness in excess of such limitation, except such as now may exist, shall be absolutely void, except as herein otherwise provided. No county or city, whose present indebtedness exceeds ten per centum of the assessed valuation of its real estate subject to taxation, shall be allowed to become indebted in any further amount until such indebtedness shall be reduced within such limit. This section shall not be construed to prevent the issuing of certificates of indebtedness or revenue bonds issued in anticipation of the collection of taxes for amounts actually contained, or to be contained in the taxes for the year when such certificates or revenue bonds are issued and payable out of such taxes. Nor shall this section be construed to prevent the issue of bonds to provide for the supply of water ＊ ＊ ＊.

"All certificates of indebtedness or revenue bonds issued in anticipation of the collection of taxes, which are not retired

within five years after their date of issue, and bonds issued to provide for the supply of water  *  *  *  shall be included in ascertaining the power of the city to become otherwise indebted; except that debts incurred by the city of New York after the first day of January, 1904,  *  *  *  to provide for the supply of water, shall not be so included."

The assessment roll of the year 1907 was taken as the basis for a statement of the assessed valuation of the real estate subject to taxation; necessarily, forasmuch as that for 1908 did not go into effect until July 6th. From such assessment roll that assessed valuation appears to have been $6,240,500,602. The constitutional limit for the incurring of municipal indebtedness would be ten per centum of that amount, or $624,050,060.20.

It is strenuously objected that, in computing the indebtedness of the city, within the purview of this provision of the Constitution, it was incorrect to include special franchises as a part of the real estate, which is valued for assessment purposes. It was shown that they entered into the valuation of the real estate, appearing by the tax assessment rolls, to the amount of $466,855,000, and the referee held that they were properly so assessed. The language of the constitutional article is explicit that "the assessed valuation of the real estate" must be taken "as it appeared by the assessment rolls", and I think the rolls are made conclusive upon the subject. In these complaints, they are not attacked and are assumed to be correct. But, if we should assume that the items in the real estate column of the assessment rolls are open to legal objections, with respect to their classification as real estate for purposes of taxation, the referee's conclusion was absolutely correct. These special franchises are rights, or privileges, of a public nature, the exercise of which is permitted under grants from the state to corporations, and the legislature, in the General Tax Law, has classified them as real estate. (See Laws of 1896, chap. 908, sec. 1, sub. 3, as amended by Laws of 1899, chap. 712.) In the nature of incorporeal hereditaments, at common law, franchises partook

13

of the nature of realty and these special franchises are insep-
arable from real property in their enjoyment. They fall,
necessarily, into that one of the two general divisions of prop-
erty made by the statute, which is described as real estate.
(Washburn on Real Property [6th ed.], sec. 1185; 1 R. S. 750,
sec. 10; Real Property Law, Laws of 1896, sec. 1, chap. 547.)

There was nothing decided in *People ex rel. Metropolitan
Street Ry. Co.* v. *State Board of Tax Commissioners*, (174
N. Y. 417), which is opposed to this view. These franchises
could never be classified as personal property and if a new sub-
ject of taxation, that fact is of no consequence in determining
the correctness of their classification as taxable property.
In my opinion, the article of the Constitution, in the respect
under consideration, must be deemed to comprehend within the
term real estate all properties which the statute makes taxable
as such.

In ascertaining the limit of the city's capacity to become
further indebted, the referee, very properly, has read the con-
stitutional provision as contemplating what may be termed a
permanent, or funded, debt, for permanent improvements, to
be paid by future taxation, and a temporary indebtedness,
created to pay the current expenses of administration and to
be liquidated from the taxes levied for the year. The total
of the debt represented by bonds outstanding of the several
cities, towns, villages and counties, which, in 1898, were con-
solidated into the present city; by corporate stocks, issued by
the present city for various purposes, and by its general fund,
assessment and certain of its revenue bonds, aggregated
$779,543,128.85. To this amount the referee added certain
of the city's obligations, or liabilities, other than bonded
indebtedness, which aggregate $26,529,785.71. In estimating
the permanent debt, represented by corporate stocks, or
bonds, there were only included of the revenue bonds, issued
in anticipation of the collection of taxes, such as had not been
retired within five years of their issue. Under section 187
of the city's charter, the comptroller is authorized to borrow,
in anticipation of its revenues, not to exceed in amount the

amount of such revenues, such sums as may be necessary to meet expenditures under the appropriations for each current year. For this purpose, revenue bonds might be issued, to be redeemed out of the proceeds of the tax levy. Within the constitutional provision, such of these bonds, only, are to be included, in ascertaining the indebtedness, as have been outstanding for more than five years since their issue. I agree with the referee that it is not essential to their exception, under the constitutional provision, that these revenue bonds should have been issued during the year, when the taxes became payable against which they are issued; provided that, when issued, they represented those taxes, within the amount unpaid of the levy, and were payable from the proceeds of their collection. Neither constitution, nor charter, fixed the times for issuing them. That was a matter left to the discretion of the comptroller, to be governed in its exercise by the city's needs and the amount of the particular year's uncollected taxes. Another class of revenue bonds, not included as part of this permanent debt, consists of such as have been issued under the authority of section 187 of the charter, "for purposes other than to meet expenditures under the appropriations for each current year", and which were made redeemable "out of the tax levy for the year next succeeding the year of their issue", under an appropriation therefor "by the Board of Aldermen and the Board of Estimate and Apportionment in the budget for such year". Bonds of this class were issued in 1908 to be redeemed in 1909. They do not differ, in their temporary character, from other revenue bonds. They are issued in emergencies and provisionally. Instead of being in anticipation of the revenue for the year, in which issued, they are redeemable in the ensuing year under a special appropriation to be made. They should not be included in the computation. There were assessment bonds, aggregating $28,370,632,65, which were issued to pay the cost of local improvements. Though the cost is assessed back, more or less, upon the property benefited, the bonds are the absolute and unqualified obligations of the city; are issued upon its faith and

credit, alone, and, when due, are payable directly. As the referee says, the lien of the city upon the property " can be regarded only as a general asset." The general fund bonds are issued under section 222 of the charter and it is plain therefrom that they are to be classified with the city's corporate stock ; as the faith and credit of the city are pledged for the fulfillment of their obligation. As held by the sinking funds, they are the subject of deduction, in the computation of the permanent debt, with other sinking fund holdings. Among the other obligations of the city, which were included in the estimate of the general permanent debt, are " Contract" and " Land" liabilities. The former comprehend such amounts as had been actually earned upon contracts outstanding, on June 30th, 1908, for public improvements. As to the correctness of this item, I shall have considerable to say presently. In " Land Liability" the referee has included the amount owing by the city to the owners of private property taken for public use. The amount, with interest, is approximated by taking the assessed value of the property ; which appears from the evidence to be conceded to represent, at least, the measure of the awards. The appraisal may exceed ; but it has not been known to be less. By law, the owners are entitled to recover the value of the land, with interest, from the city ; in which had become vested the title and possession, upon formal proceedings taken by the municipal authorities looking to the acquisition of the land. The aggregate of the indebtedness, as thus ascertained, is $806,072,914.56.

From this indebtedness deductions were made of the following items. Bonds issued by the counties, prior to the consolidation, amounting to $21,808,279.64, were, properly, deducted. They are not to be included in the computation of the city's indebtedness. (*Adams* v. *East River Savings Institution*, 136 N. Y. 52.) Water supply bonds were, correctly, deducted to the amount of $33,168,254.13. Under the article of the Constitution, bonds issued to provide for the supply of water, after January 1st, 1904, are not to be included in ascertaining the power of the city to become indebted. In

the statement of the general debt, the referee had included the whole issue of such bonds, amounting to $58,208,163. The amount to be deducted was ascertained by taking the amount issued from January 1st, 1904, to June 30th, 1908, being $38,937,318.26, less the amount thereof used to pay the debts incurred prior to January 1st, 1904, being $5,769,064.13. There were deducted holdings by the sinking funds of bonds, other than those not included in computing the city's indebtedness within the constitutional requirements, amounting to $191,442,165.76. City stocks, or bonds, so held are not debts, which it can be called upon to pay, within the meaning of the constitutional prohibition. (*Bank for Savings, etc.*, v. *Grace*, 102 N. Y. 313, 325, 326.) "The object of every sinking fund," it was said, "is to diminish the debt, whose existence warranted its foundation", and the amount "required to pay off the city debt, if it all came presently to maturity," would be a sum "equal to its bonds or stock, not including that held by the sinking fund". There was deducted an amount of $6,662,498.26, representing water supply bonds held by the various sinking funds. The objection that it was a double deduction, *pro tanto*, is untenable. In the statement of the account, there was left in, as an item of the so-called permanent debt, so much of the amount of the water supply bonds issued since January 1st, 1904, as had been used to pay that class of debts incurred prior to January 1st, 1904; namely, $5,769,064.13. The bonds held by the sinking fund commissioners were of the class, which had been issued after January 1st, 1904, and, consequently, are not to be included in the city's indebtedness, within the constitutional provision. It must be, therefore, that, either, to the extent of their possible use by the commissioners, they would amortize the constitutional indebtedness; or, they would be applicable in offsetting the other bonds of the class included in the indebtedness. Other deductions were cash in the sinking funds, $4,237,927.70; of the annual installment included in the budget of 1908, required to be paid into the sinking fund, $5,531,864.02; bonds payable in 1908, pro-

vision for whose payment was made in the budget for that year, $820,825.47; cash in treasury from unallotted proceeds of bonds, issued to pay debts incurred and which are included in reaching the figure of the city's indebtedness, $15,923,744.14 and cash on hand, applicable to the discharge of contract liabilities, $8,633,009.90. Deducting the sum of these items, or $288,228,569.02, from $806,072,914.56, the gross amount of the city's indebtedness, as it has been above stated, we ·have $517,844,345.54, as the total of the permanent indebtedness, within the meaning of the Constitution. This amount deducted from $624,050,060.20, the ten per centum of the assessed valuation of real estate subject to taxation, leaves $106,205,714.66, as the margin of the city's limit for incurring further indebtedness, according to the referee's statement.

I find myself in accord with the referee's reasoning and conclusions; except upon one question, which is of great importance. I refer to the question of whether certain outstanding contracts, validly entered into by the city for public improvements, should be regarded as an existing indebtedness within the purview of the Constitution. There were, on June 30th, 1908, such contracts, which obligated the city to an amount estimated to be in excess of $54,000,000, and, except as to the amount which had been earned upon them, which is stated to have been, on that day, $2,553,933.92, the referee has refused to include that sum as an indebtedness. I think the referee was in error. The distinction made by him is that such debts do not create a debt, but are agreements for future indebtedness to be incurred upon performance by the party contracted with. In that view, he says that these contracts by the city represent, not a present debt for the $54,000,000, but contract obligations out of which a future debt may arise. He holds that the indebtedness to be taken into account, in determining whether the constitutional debt margin has been exceeded, " is the indebtedness, or the amount due and payable under such contract, *at the time the test is made* ". In my opinion, this is taking a view of the constitutional provision, which is too technical and which tends to

narrow too much a provision intended to safeguard the municipalities of the state against coming under an excessive indebtedness. It was held in *Bank for Savings, etc.,* v. *Grace,* (*supra*), that the " indebtedness referred to is an indebtedness to be met in the future by taxation " and " the mischief to be prevented was the creation of an excessive debt for local improvements, or public works, or the loaning of municipal credit, so payable that the burden should not fall upon those who contracted the obligations, or on their revenues, but on posterity ". (p. 318.) Undoubtedly, as it was held in that case, the constitutional prohibition was aimed at " an actual and not a theoretical indebtedness " ; but it would be quite incorrect, in my opinion, to regard the obligations of the contracts in question as a theoretical indebtedness. In that case, the question was whether bonds of the city of New York, held by the commissioners of the sinking fund, constituted an indebtedness of the city within the purview of the Constitution, and they were held not to be such. Theoretically, they were, until actually canceled by the commissioners. The discussion, there, was in view of the discretionary power of the commissioners to sell the city stock, or bonds, at any time held by them, for the sole purpose of buying, with the proceeds of the sale, other city stock redeemable at an earlier day ; the result being an exchange of stocks and not an enlargement of the body of indebtedness. The term " theoretical ", as applied to an indebtedness, was used in reference to bonds so held and not canceled. If we are to fix the margin of the constitutional limit for indebtedness with reference to what are the fixed obligations of the city, as are its stocks, or its bonds, then these contract obligations must be excluded ; but I am strongly of the opinion that to do so will result in the failure of the purpose, which led to the constitutional provision. That purpose is obvious. It was to prevent the municipalities from improvidently contracting debts for other than ordinary current expenses of administration. It was to restrict their borrowing capacity and, thus, to minimize the mischievous consequences to the taxpayers of extravagance in city expenditures. The language is significant : " no county,

or city, shall be allowed to become indebted for any purpose, *or in any manner*", etc. That is a mandate directed to all municipal officers, which, in effect, forbids them to obligate the municipality in any manner, which may result in an indebtedness in excess of ten per cent of the assessed valuation of the city's real estate. The words, in which the People have expressed their will in the fundamental law of the state, should be read in the broadest sense, which will give effect to it. Indebtedness is a state of being in debt and a debt is defined to be "that which one person is bound to pay to another"; or an "obligation". It is that which is due by express agreement and its definition is not affected by the manner, or condition, upon which it is to be paid. The con stitutional provision is a limitation upon the power of the city to become indebted; that is to say, to contract any indebtedness, which shall exceed an amount fixed with reference to its taxable real estate, and if the question, whether liabilities upon contract obligations are to be included in ascertaining the present indebtedness, is a debatable one, then it should be resolved in favor of the view which effectuates the purpose of the provision in all its integrity. It is conceded that none of these contracts, involving expenditures for upwards of $54,000,000, was payable from current revenues, or annual tax collections. They were made for permanent public improvements, pursuant to section 149 of the charter, under certification by the comptroller as to the fund applicable thereto. They are chargeable to, and are payable from, bonds issued for a term of years. Such bonds are to be paid from future taxation and their issue had been authorized by the municipal authorities, prior to the execution of the contracts. Why should these contracts not be regarded as constituting an indebtedness of the city? The law presumes that the parties to a contract will perform their agreements. If the incurring of contractual obligations to pay for public improvements does not represent an indebtedness, which is to be taken into account in ascertaining the margin of the debt limit, the force of the constitutional prohibition becomes

doubtful. If the provision applies, not to the time of the execution of the contract, but, only, to the time when payments become due, very remarkable results may follow. To illustrate : if, prior to the time of the completion of a contract for an extensive public improvement, made when the margin of the city's debt limit, as measured by an indebtedness consisting in direct, or absolute obligations, seemed to warrant it, the debt limit is reached, through the issuance of bonds to meet payments upon other contracts subsequently made, but completed at an earlier date, is the obligation of payment upon the first contract avoided ? The constitutional provision is that " all indebtedness in excess of such limitation, * * * shall be absolutely void"; with an exception which does not apply to the case supposed. Can that provision be invoked by a taxpayer to defeat an obligation of the city, valid and binding when incurred ? I do not think we should agree to that. Then, may the validity of a contract obligation depend upon conditions, as determined by subsequent facts ? If contracts are binding when made, are they to be invalidated by after-occurring events in the city's financial career ? If the answer is obvious, it is, at once, suggested to the mind that the constitutional debt limitation does include within its provision the actual, or estimated, indebtedness upon such contracts. Again, to illustrate what I conceive to be the fallacy of the argument in favor of the exclusion of such contract obligations from the computation of indebtedness, if the assessed valuation of taxable real estate should be less in a subsequent year and the margin of the debt limit is, in consequence, reached, or narrowed, is the indebtedness to be met upon a contract, made upon the basis of the assessment rolls in a prior year, showing an ample debt margin, avoided, because the payment will put the city in debt beyond the constitutional limit ? I recognize that, as a rule, the figures of assessed valuations of real estate increase each year ; but it does not impair the usefulness of the illustration. If the provision as to the debt limit is not applicable to binding contract obligations, when incurred, then how is it safely

applicable when the obligations mature? If it is not heeded, when obligations exist upon contracts for public improvements, of what avail will it be, if the obligation to meet payments maturing in subsequent years shall result in a burdensome taxation?

It seems to me that the better conclusion to be reached upon this question, and the one in better accord with the policy of the constitutional provision, is that, in ascertaining the margin of the city's constitutional debt limit, "existing indebtedness" must be regarded as including the city's liability upon contracts for public improvements, which is intended to be met from an issue of bonds.

Decisions by the courts of other states are cited by counsel on either side of the question. Many are inapplicable, by reason of the differing provisions of the state constitutions. In Illinois, the decisions of the Supreme Court support the views which I have expressed upon the subject of what constitutes an indebtedness. The Constitution of that state prohibits allowing a city "to become indebted  *  *  *  to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of taxable property therein, to be ascertained by the last assessment for state or county taxes" etc. In *Culbertson* v. *City of Fulton,* (127 Ill. 30), it was sought to restrain the city from accepting water works, constructed for it under a contract, on the ground that the constitutional provision would be violated. The court held that "by entering into the contract, the city became indebted. The obligations entered into by the terms of the contract constitute such an indebtedness as is contemplated by the language of the constitution. It cannot be said that the indebtedness did not come into being, until the work was completed and accepted by the city". In *Walla Walla City* v. *Walla Walla Water Company,* (172 U. S. 1), to which the referee refers, the question arose as to whether a contract, by which the city agreed to pay a rental of $1,500 a year, for twenty-five years, for a water supply, created an indebtedness of the aggregate amount of the rentals in all the years. In

holding that it did not, the United States Supreme Court considered that a distinction exists between contracts for the supply of water, or gas, for a stipulated rental, and contracts for the erection of a public improvement; observing that in the latter case "the debt is created at once, the time of payment being only postponed". I do not consider the case of *Weston* v. *City of Syracuse*, (17 N. Y. 110), also relied upon by the referee, to be applicable. It involved a construction of a clause of the city charter, which was intended to prevent the possibility of an increase of the city debt, "by providing a penalty *in terrorem* for a violation of law on the part of the members of the common council, * * * voting to contract such debt". The decision turned upon the peculiar phraseology of the charter provisions, in determining that the contract in question, though an obligation, was not a debt within the intendment of the charter.

Without an ampler discussion, I am of the opinion that the amounts, which, on June 30th, 1908, were involved in the contracts of the city for public improvements, and which the referee states as being upwards of $54,000,000, should have been included in ascertaining the city's "existing indebtedness". That would result in a reduction, *pro tanto*, of the "margin of constitutional limit of indebtedness", as stated by the referee; less, of course, by the amount already charged against the city, as earned upon the contracts, viz.: $2,553,933.92. On the referee's figures, the debt limit should have been stated as $54,759,646.74.

I agree with the referee that all unliquidated and disputed claims, pending against the city on June 30th, 1908, which he computes as upwards of $62,000,000, should not be included as a part of the city's existing indebtedness. Liability upon them is denied; they have not been adjudicated and, so far as they may be ultimately reduced to judgment, they will be payable from the proceeds of special revenue bonds; which, as it has previously been shown, do not enter into the constitutional purview of an existing indebtedness.

The views expressed, notwithstanding the difference with

respect to the item of " contract liability ", require the affirm-ance of the orders, which denied the applications for injunc-tions, restraining the defendants. The difference in view, merely, affects the margin of debt limit on June 30th, 1908. Reference to the report of the learned referee will be profit-able, if a fuller understanding of the questions is desired. I advise that the questions certified be answered as follows: Questions 1 to 11, inclusive, 17 to 23, inclusive, 27, 31 to 41, inclusive and 43 should be answered in the affirmative. Ques-tions 12 to 16, inclusive, 24 to 26 inclusive, 29 and 42 should be answered in the negative. Question 28 should be answered as follows: The real estate, which furnishes the basis for valuation, is what appears assessed as such in the assessment rolls. Question 30 should be answered as follows: The amount payable on a contract liability becomes an indebted-ness, when the contract has been certified by the comptroller, under section 149 of the charter.

CULLEN, Ch. J. I concur in the opinion of Judge GRAY. with one exception hereafter noted. The most important question before us is whether in the case of contracts for pub-lic improvements, the cost of which is to be defrayed by the issue of city bonds, the whole estimated sum to be paid under the contracts is to be considered a city indebtedness upon the execution of the contract, or only from time to time the amounts which then may be actually due thereon for work already performed. As regards this question I agree not only in the opinion of Judge GRAY, but in that of Judge HAIGHT, for, as I read the opinions, both of my brethren are in accord as to the principle of law which should deter-mine the question. Judge HAIGHT thinks that the record does not show that the contracts which are the subject of this difference are to be paid by the issue of bonds, and, therefore, that the certified questions should not be answered. I think that the record does show this fact. On the argument of the case all parties conceded the fact to be as assumed by Judge GRAY, and common knowledge would almost seem to justify

us in taking notice that the large sums covered by these contracts could not be raised by taxation of a single year.

The availability as an offset to the general indebtedness of the city of water bonds issued by the city since the new Constitution and held in the sinking funds, I think depends entirely upon the particular sinking funds in which such bonds are held and not on the character of the bond. If they or other bonds are held in the special sinking fund created by section 208 of the charter, or in any sinking fund which is by law especially created to discharge indebtedness which, under the Constitution, is not to be reckoned in ascertaining the city's debt, then they cannot be treated as an offset against the general city debt; otherwise, they should be so considered. The questions certified to us do not seem to present any distinction between the several sinking funds, and any answer we make to those questions should be considered as subject to the qualification here expressed.

HAIGHT, J. I differ to some extent from the conclusions reached by Judge GRAY with reference to the answer to the 19th, 23d and 27th questions certified for our determination. The 27th question is as follows: "Does the amount payable upon contract liability for work and labor to be performed or materials to be furnished under contracts for public improvements by said city of New York, to be paid for as such work is performed or the materials furnished from time to time from the proceeds of bonds, become an indebtedness of said city within the provisions of article 8, section 10, of the Constitution of the state at the time when the comptroller of said city indorses thereon his certificate as required by section 149 of the Greater New York charter, that there remains a balance of the appropriation or fund applicable thereto sufficient to pay the estimated expense of executing such contract as certified by the officer making the same?"

· It appears from the finding of the referee that on the 30th day of June, 1908, the outstanding contracts, upon which money would become due in the future for labor performed

and material furnished, amounted to the sum of $54,000,000. and the question arises as to whether this amount should be deducted from the $106,000,000 which the referee found was the borrowing margin of the city. These contracts were entered into pursuant to the provisions of section 149 of the Greater New York charter, which, so far as material, are as follows: "No contract hereafter made, the expense of the execution of which is not by law or ordinance, in whole or in part, to be paid by assessments upon the property benefited, shall be binding or of any force, unless the comptroller shall indorse thereon his certificate that there remains unexpended and unapplied, as herein provided, a balance of the appropriation or fund applicable thereto, sufficient to pay the estimated expense of executing such contract, as certified by the officer making the same." The manner in which these contracts were executed is provided for by section 419 of the charter, and is disclosed by the testimony of the witnesses Andrews and Smith. It is substantially as follows: When an improvement has been authorized the borough president publishes a notice for ten days asking for bids. When the bids are received and opened and the lowest bidder is ascertained, the bid is transmitted to the comptroller for his approval of the sureties. His approval, if made, is transmitted to the head of the department to execute the contract. The contract when drawn and signed is transmitted to the comptroller, and if satisfactory, he indorses thereon his certificate that there is a fund applicable sufficient to pay the estimated expense of executing the contract. This, upon delivery, completes the contract and it then becomes a binding instrument between the city and the contractor. It will be observed that the certificate of the comptroller, as required by section 149, is silent with reference to the source or character of the fund which is applicable to the payment of the contract. The witness Andrews further states that "sufficient funds available," as appearing in the comptroller's certificate, does not mean cash on hand, but that it means sufficient funds have been legally authorized. It would, therefore, seem that in the absence of

any provision of the contract or of the statute requiring or directing the payments to be made by the issuing of bonds, that the installments, as they matured upon the contract and became due, would be payable in cash, like other obligations of the city. If all of the contracts of the city for public improvements must be paid in the issuing of long-time bonds, it would follow that the city as a corporation could not long exist without exceeding the constitutional limitation. Instead of paying for the improvements in cash as the money became due and payable thereon, the city would be compelled to issue long-time bonds therefor, thus placing the burden upon future generations which should be borne by the present generation. Many of the improvements are of a temporary character, subject to wear and decay and soon have to be replaced. If all of such contracts must be paid by the issuing of bonds, the constitutional limitation would soon be reached and thereafter the city could not enter into any contract of this character, even for the building of a schoolhouse, for if it must be paid for by the issuing of bonds, they, under the provisions of the Constitution, would be void and illegal. These contracts, as I understand, are the ordinary contracts for the construction of public buildings, wharves, bridges and streets. The contracts do not provide that the payments maturing thereon from time to time shall be made by the issuing of bonds, nor do any of the provisions of the charter require these payments to be so made. It is true that under section 222 of the charter the city may authorize the issuing of bonds to be called general fund bonds, and these bonds may be used for the payment of the obligations of the city. The witness Smith tells us that the general fund bonds, issued pursuant to section 222, are usually sold *en bloc*, many millions at a time, and the amounts received from such sale are passed to the credit of a fund called the proceeds of the sale of such bonds, and then, when funds are needed in the various accounts of the city, the money is transferred from this fund to the particular account to which it is required. It is, therefore, apparent that the installments, as

they become due and payable upon these contracts, are payable in cash, if any remains to the credit of that particular department of the city. If not, they may be paid by the issuing of revenue bonds, payable out of the taxes to be assessed and collected upon the next tax roll. Or, if the authorities of the city so determine, they may be paid by moneys transferred from the account of the proceeds of the sale of general fund bonds. It thus follows that the payment out of the proceeds of the general fund bonds is permissive and not compulsory. And any time when the constitutional limitation is reached which would prohibit the issuing of such bonds, then the city must pay its contract liabilities as they mature and become due and payable in cash or out of the revenue bonds.

There may be improvements which the statute requires to be paid for in bonds, such as the building of subways and reservoirs. There may be other contracts which the proper board may determine should be paid for in bonds. But it is not found as a fact by the referee, nor do I understand it to be established by the evidence, that these contracts are of that character. If the contracts were to the effect that the pay_ments falling due thereon must be paid by the issuing of long-time bonds, or that the payments were required to be so made by the charter or the board of estimate and apportionment, then I think Judge GRAY would be correct in his conclusions; for then the obligations would become complete to pay in bonds by force of the contract or the statute as the payments become due. To hold otherwise might produce absurd results. Should the constitutional limitation be reached by the city before the contracts were performed in full, it would follow that the contracts theretofore completed would be valid, and those thereafter performed would be invalid, for the reason that the bonds to be issued in payment thereof would exceed the constitutional limitation. It thus might follow that the contracts made for the construction of a great public improvement, which would necessarily consume a number of years in its construction, would become void under the Constitution, while many subsequent contracts requiring less time to

execute would be fully completed before the limitation was reached.

The rule which should control the determination of such questions is to the effect that when a contract is made for a public improvement, which by its terms or by the provisions of the charter is required or directed to be paid with long-time bonds presently issuable, it becomes a debt within the meaning of the Constitution, even though such debts are payable in the future by installments. But in contracts for such improvements which are not required to be paid by the issuing of such bonds, but are payable in cash when the future installments become due, they are not debts within the meaning of the Constitution until the maturity of the installments, even though the municipality in its discretion may issue bonds to pay such installments. In the former case the debt is deemed to be created at once, the time of payment only being postponed. In the latter case, the indebtedness is not considered created until the consideration has been furnished. This, as I understand, is in accordance with the views of Judge Dillon as expressed in his new work on Municipal Corporations.

Inasmuch as the referee has not found facts upon which we can determine the precise character of these contracts I am inclined to the view that questions 19th, 23d and 27th, certified, should not be answered either in the affirmative or negative, but should be answered in accordance with the requirements of the rule to which I have called attention.

Orders affirmed, with one bill of costs in all cases.

Opinions by CULLEN, Ch. J., and GRAY and HAIGHT, JJ.; CULLEN, Ch. J., WERNER and HISCOCK, JJ., concur with GRAY, J., except as to the allowance of the securities in the sinking funds to meet the water debt created since the Constitution of 1894 as a .deduction from the general indebtedness of the city; EDWARD T. BARTLETT and VANN, JJ., concur with HAIGHT, J.; EDWARD T. BARTLETT, HAIGHT, VANN, WERNER and HISCOCK, JJ., concur with CULLEN, Ch. J., as to the effect of the sinking funds; GRAY, J., dissents from CULLEN, Ch. J., on this point.

**14**

The questions certified are answered as follows:

No. 1. Question certified answered in the affirmative. All concur.

Nos. 2, 3 and 4. Questions certified answered in the affirmative. All concur.

No. 5. Question certified answered in the affirmative. All concur.

No. 6. Question certified answered in the affirmative. All concur.

No. 7. Question certified answered in the affirmative. All concur.

No. 8. Question certified answered in the affirmative. All concur.

No. 9. Question certified answered in the affirmative. All concur.

No. 10. Question certified answered in the affirmative. All concur.

No. 11. Question certified answered in the affirmative. All concur.

Nos. 12, 13 and 14. Questions certified answered in the negative. All concur.

No. 15. Question certified answered in the negative. All concur.

No. 16. Question certified answered in the negative. All concur.

No. 17. Question certified answered in the affirmative. All concur.

No. 18. Question certified answered in the affirmative. All concur.

No. 19. Question certified answered in the affirmative. Concur: CULLEN, Ch. J., GRAY, WERNER and HISCOCK, JJ. Not voting: EDWARD T. BARTLETT, HAIGHT and VANN, JJ.

Nos. 20, 21 and 22. Questions certified answered in the affirmative. All concur.

No. 23. Question certified answered in the affirmative. Concur: CULLEN, Ch. J., GRAY, WERNER and HISCOCK, JJ. Not voting: EDWARD T. BARTLETT, HAIGHT and VANN, JJ.

Nos. 24 and 25. Questions certified answered in the negative. All concur.

No. 26. Question certified answered in the negative. All concur.

No. 27. Question certified answered in the affirmative. Concur: CULLEN, Ch. J., GRAY, WERNER and HISCOCK, JJ. Not voting: EDWARD T. BARTLETT, HAIGHT and VANN, JJ.

No. 28. Question certified answered as follows: The real estate that furnishes the basis for valuation is what appears assessed as such in the assessment roll. All concur.

No. 29. Question certified answered in the negative. All concur.

No. 30. Question certified answered as follows: The amount becomes an indebtedness when the contract has been certified by the comptroller under section 149 of the charter. See answer to question No. 27. Concur: CULLEN, Ch. J., GRAY, WERNER and HISCOCK, JJ. Not voting: EDWARD T. BARTLETT, HAIGHT and VANN, JJ.

No. 31. Question certified answered in the affirmative. All concur.

No. 32. Question certified answered in the affirmative. All concur.

No. 33. Question certified answered in the affirmative. All concur.

No. 34. Question certified answered in the affirmative. All concur.

No. 35. Question certified answered in the affirmative. All concur.

No. 36. Question certified answered in the affirmative. All concur.

No. 37. Question certified answered in the affirmative. All concur.

No. 38. Question certified answered in the affirmative. All concur.

No. 39. Question certified answered in the affirmative. All concur.

No. 40. Question certified answered in the affirmative. All concur.

No. 41. Question certified answered in the affirmative. All concur.

No. 42. Question certified answered in the negative. All concur.

No. 43. Question certified answered in the affirmative. All concur.

The answers to questions 31 to 41, both inclusive, relative to the sinking funds, must be qualified by the statement that none of the securities in the sinking funds especially pledged under the Constitution for the retirement of obligations not counted against the city in ascertaining its indebtedness, can be allowed as a deduction or offset against the general debt, which under the Constitution is the subject of computation.

Ordered accordingly.