ALFRED HIGGINS, Appellant, v. JACOB CROUSE, Respondent.

1. FRAUD — STATUTE OF LIMITATIONS — CODE OF CIVIL PROCEDURE, § 382, SUBD. 5. Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him and he will be held, for the purposes of the provisions of the Statute of Limitations embodied in subdivision 5 of section 382 of the Code of Civil Procedure, to have actually known what he might and ought to have known.

2. FRAUD — FAILURE OF INVESTMENT. The mere fact that a venture in which one has been induced to invest results disastrously and the investment fails does not raise the implication that the venture had failed when the investment was made; there must be something beyond this to raise the duty of inquiry on the part of the investor and to justify a suspicion of fraud in inducing him to invest.

*Higgins* v. *Crouse* (71 Hun, 615), reversed.

(Argued October 15, 1895; decided November 26, 1895.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made September 12, 1893, which reversed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*T. K. Fuller* for appellant. The action was properly brought as an equity action. (*Bosley* v. *N. M. Co.*, 123 N. Y. 550.) The bar of the Statute of Limitations, in actions

like the present, is fixed and controlled solely by the statute of New York relating thereto. (Code Civ. Pro. § 382, subd. 5; 3 & 4 Will. chap. 27, § 26; 2 Story's Eq. Juris. [13th ed.] § 1521; *Vane* v. *Vane*, L. R. [8 Ch.] 383; *Chetham* v. *Hoare*, L. R. [9 Eq.] 571; *Mayne* v. *Griswold*, 3 Sandf. 463; *P. R. R. Co.* v. *Mayo*, 67 Maine, 470; 65 Maine, 566; 60 Maine, 306; *Fritschler* v. *Koehler*, 83 Ky. 78; *Boyd* v. *Blankman*, 29 Cal. 19; *Parker* v. *Kuhn*, 21 Neb. 413; *Boomer* v. *French*, 40 Iowa, 601; *Mower Co.* v. *Smith*, 22 Minn. 97; *Upton* v. *Tribilcock*, 91 U. S. 55.) This case is plainly within the provisions of subdivision 5, section 382 of the Code of Civil Procedure, and is an equity action. (*Foote* v. *Farrington*, 41 N. Y. 170; *Carr* v. *Thompson*, 87 N. Y. 160; *Bosley* v. *N. M. Co.*, 123 N. Y. 550; *Gallup* v. *Bernd*, 17 N. Y. S. R. 194; *Miller* v. *Wood*, 116 N. Y. 351; *Kilmer* v. *Smith*, 77 N. Y. 226; *Crow* v. *Lewin*, 95 N. Y. 423.) The defendant is estopped from setting up the bar of the statute, and has forfeited his right to do so by concealing his fraud and preventing inquiry during the term of the statute, and even down to the time when his original fraud was accidently discovered. (13 Am. & Eng. Ency. of Law, 682, 719, 728; *O'Dell* v. *Burnham*, 61 Wis. 562; *Ferris* v. *Henderson*, 12 Penn. 49; *Beatty* v. *Poole*, 13 S. C. 383; *Simmons* v. *Baynard*, 30 Fed. Rep. 532; *Bailey* v. *Glover*, 21 Wall. 242, 347–349; *Kirby* v. *L. S. R. R. Co.*, 120 U. S. 130; *Traer* v. *Clews*, 115 U. S. 528, 538.) Under the wording of our statute no duty of diligence in discovering the fraud is imposed upon the party who has been defrauded toward the party who defrauded him; and as the plaintiff's right of action is statutory simply, the statute should be construed as it reads, providing it is clear and explicit in its language. (*Brown* v. *Post*, 1 Hun, 303; *Baker* v. *Spencer*, 47 N. Y. 562; *Baker* v. *Lever*, 67 N. Y. 304; 2 Pom. Eq. Juris. § 917; *Vane* v. *Vane*, L. R. [8 Ch.] 383; *Rolfe* v. *Gregory*, 4 De G., J. & S. 576.)

*Watson M. Rogers* for respondent. It was the duty of the General Term to pass upon the facts. (*Finch* v. *Parker*, 49

N. Y. 1; *Nostrand* v. *Knight*, 123 N. Y. 614; *Godfrey* v. *Moser*, 66 N. Y. 250; *P. I. Co.* v. *Vessels*, 127 N. Y. 206; *Ward* v. *Craig*, 87 N. Y. 550.) There were no fraudulent representations. (Laws of 1848, chap. 40, §§ 1, 3, 25, 27; *Shultz* v. *Hoagland*, 85 N. Y. 464; *Bernheimer* v. *Rindskopf*, 116 N. Y. 428–436; *Constant* v. *University*, 133 N. Y. 640.) It is impossible for defendant to comply with the judgment. (Laws of 1848, chap. 40, § 25; 123 N. Y. 550; Story's Eq. Juris. §§ 33, 74, 691, 794; *Ambler* v. *Choteau*, 107 U. S. 586.) If the plaintiff's remedy be at law the action is barred by the six years' statute. (*Foot* v. *Farrington*, 41 N. Y. 164; *Miller* v. *Wood*, 116 N. Y. 351.) Assuming the action was one cognizable by a court of equity, it is still barred within subdivision 5, section 382 of the Code of Civil Procedure, or subdivision 6, section 91 of the Code of Procedure. (*Williamson* v. *Brown*, 15 N. Y. 354; Angell on Lim. §§ 187, 190; Beach on Mod. Eq. § 83; *Higgins* v. *Crouse*, 63 Hun, 134; *Leffingwell* v. *Warren*, 2 Black [U. S.], 599; *Bell* v. *Morrison*, 2 Pet. 360; *McCluny* v. *Silliman*, 3 Pet. 270; Story's Conf. of Laws, § 576.) The complaint should have been dismissed on the ground of *laches*. (Morawetz on Corp. § 630; *Powell* v. *Murray*, 3 Edw. Ch. 636; *Spoor* v. *Wells*, 3 Barb. Ch. 199; Story's Eq. Juris. § 529; Beach Eq. Juris. § 17; *Peters* v. *Delaplaine*, 49 N. Y. 362; *Speidel* v. *Henrici*, 120 U. S. 377.)

Finch, J. This action was brought to rescind a contract for the purchase of stock in an oil company, to vest title to such stock in the vendor and release the vendee from future liability as its owner, and to recover damages for the fraud alleged to have been perpetrated in the sale. The Special Term found as a fact the fraud charged in the complaint; that the plaintiff did not discover it until shortly before the commencement of this action; that he was not negligent in failing to discover it earlier; and awarded judgment for a rescission and for damages. On appeal the General Term reversed the judgment, specifying in the order that the reversal was both upon the

law and the facts. The opinion of the court rendered upon the first appeal, (63 Hun, 134), and approved on the second, rested wholly upon the Statute of Limitations as constituting a defense to the action, and the conclusion involved a different view both of the facts and of the law from that adopted by the trial court. In such a case the facts are open to our review, and to sustain the reversal we must be satisfied that one or more of the findings of the trial court are against the weight of evidence or that the proofs clearly preponderate in favor of a contrary result. (*Barnard* v. *Gantz*, 140 N. Y. 253.)

The question mainly discussed turns, first, upon the construction of section 382, subdivision five, of the Code, which enacts that " where the action is brought to procure a judgment other than for a sum of money, on the ground of fraud, in a case which, on the 31st day of December, 1846, was cognizable by the Court of Chancery," the action must be begun within six years after the cause of action accrues, but that " the cause of action in such a case is not deemed to have accrued until the discovery by the plaintiff or the person under whom he claims of the facts constituting the fraud." The opinion of the General Term does not dispute the finding of the trial court that the plaintiff did not actually discover the fraud perpetrated upon him until about the time of the commencement of the action, but holds that he might have discovered it earlier and ought to have done so, and was negligent for not doing so, and thereby lost his right of action. The appellant objects to this ruling, that it interpolates into the statute a condition not expressed or contained in it, and utterly without right or authority ; and that it is an attempt by judicial legislation to pervert or override the plain words of the enactment. The learned counsel admits that some such condition has found its way into the text books and even into judicial opinions, but accounts for the fact as the product of a blind following of the English authorities without noting the circumstance that the foreign statute, unlike our own, contains the added condition of reasonable diligence. It is argued fur-

ther that not only is such added condition absent from our statute, but we are debarred from imposing it by our own decisions that the person defrauded owes no duty of active diligence for a discovery of the fraud to the person who has wronged him, (*Baker* v. *Lever*, 67 N. Y. 304); and so, not only the absence from the statute of the words requiring such diligence, but the fact that no such duty is due at all, make the condition imposed by the General Term without authority, illogical and wholly unreasonable. The argument thus framed would be unanswerable if it exhausted the question. But it seems to me that it does not, and fails to take fully into account the words of the statute itself. Without effort to change it, or to interpolate some new clause or condition, there still remains the inquiry in a given case what is meant by a discovery of the facts constituting the fraud. That inquiry raises, ordinarily, a mixed question of law and fact. Fraud lies in the intent to deceive, but the mental emotion is inferred from the facts which indicate it, and it is with those facts and the inferences to which they lead that the law necessarily deals. When, therefore, facts are known from which the inference of fraud follows, there is a discovery of the facts constituting the fraud and within the precise terms of the statute. That the defrauded party did not actually draw the inference, but shut his eyes to it, does not stop the running of the statute. He ought to have known, and so is presumed to have known, the fraud perpetrated. But a case may arise where he knows none of the facts, where no circumstance has occurred calculated to arouse his suspicion or disturb his confidence or suggest the need of inquiry. In such a case I think we are bound to say that he owes no duty of diligence to discover a fraud which he has no reason to suspect, and is not negligent for failing to enter upon an investigation which no fact within his knowledge indicates to be necessary or prudent. But still another emergency may arise. Let us suppose that the injured party does not know all the facts, is not aware of enough of them to justify a decided inference of fraud, but does know sufficient to fairly arouse suspicion, to

create a probability, to suggest the need of an inquiry. Can a party so situated omit all investigation, remain purposely blind, neglect the duty of inquiry, when reasonable and natural action would reveal the truth and disclose the fraud? I think not. In such a case it seems to me that we are bound to impute to the party the knowledge which he ought to have had and would have had if he had done his duty, and say for the purposes of the Statute of Limitations that there was in law a discovery of the facts which constitute the fraud. Certainly there was a discovery of some of them, and the party should be charged with a knowledge of the rest when he might and should have known them. That is the doctrine laid down in Angell on Limitations (§ 187) and seems to be involved in *Farnam* v. *Brooks* (9 Pick. 212). It accounts for and justifies the ruling in *Mayne* v. *Griswold* (3 Sandf. 484), which appears to have been made and accepted without serious dispute. I think the true rule is that, where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him. He will be held, for the purposes of the Statute of Limitations, to have actually known what he might have known and ought to have known. The doctrine thus understood encounters none of the difficulties so ably presented in the argument for the appellant.

The question of fact, therefore, becomes this: did any facts come to the plaintiff's knowledge which fairly put him on inquiry as to the commission of a fraud, which in the mind of an ordinary man would have awakened suspicion, and which made it the duty of the plaintiff to further investigate? It is upon this question that I feel constrained to differ with the General Term and to hold that nothing in the proof so put the plaintiff on inquiry respecting a probable fraud as to enable us to impute to him a knowledge of it more than six years before the commencement of the action.

The plaintiff testified that the defendant, under pretense of gratitude for a previous favor, induced the plaintiff to purchase the shares of oil stock by a representation that the company had bought the Shaffer farm in the oil regions; that wells were being put down with every prospect of success; that it was going to be a big thing, and that the stock was selling readily at par. This was on November 4th, 1865, and the plaintiff gave his note for the purchase which matured on the 7th of February, 1866. The plaintiff narrates another interview at that date. He said to the defendant that he had heard rumors on the street that the prospects for getting oil were not good, to which the defendant replied that the rumors were false; that they were putting down wells with prospects of success; that everything was all right and just as stated. The plaintiff thereupon paid part of his note and the balance later and took his stock. The fact was then proved that when each representation was made the value of the farm had already been tested and it had been proved to be destitute of oil. Two wells had been drilled to the usual depth and were wholly destitute of oil, the derrick and engine and drilling machinery had been sold and removed, and the effort to obtain oil abandoned. The fraud charged consisted not in the ultimate failure of the enterprise, which might have honestly happened, but in concealing the vital fact that the land had already been tested and found non-producing, and in the affirmative false representation that the test was then in progress with every prospect of success. The two facts of this concealment and this falsehood at the date of the purchase were never known or suspected by the plaintiff until in 1889, when Bly, the treasurer of the company, told him that when the certificate was issued he, Bly, knew that the thing had "busted" and the stock was worthless. There is no conflict of evidence as to the fact of the failure of the wells and the date of that failure. It was at least as early as July 4th, 1865. The conflict which does exist relates only to the date of Higgins' purchase. He puts it at November 4th, 1865, the date of his note, while the defendant pushes it further back into

late in 1864 or early in 1865, without fixing any precise date, and without any memoranda to refresh a recollection running back twenty years. The finding of the Special Term as to the fact of the fraud was not against the weight of evidence. The cross-examination of defendant showed a decided balance of probability in favor of the version of the plaintiff.

But, assuming that, the General Term still say that facts enough came to plaintiff's knowledge to put upon him the duty of inquiry. What was said about it, and all that was said about it, was this: "The plaintiff during all this time was a business man in Syracuse, and the officers and corporators of the company were also there. The secretary and treasurer, Mr. Bly, and the foreman, Potter, were there. He apparently at any time could by inquiry have readily ascertained when the company stopped work. He, however, made no inquiries on the subject until May, 1889. He says that he was satisfied, in 1871, that he had lost his money. He must have known that the company prior to that time had stopped. No dividends or assessments were made. Having made up his mind, in 1871, that the company was a failure, he was then put upon inquiry as to whether his purchase was genuine."

So much of this statement in the opinion as shows that the plaintiff could have applied for information to other officers of the company with some possibility of discovering the truth is quite immaterial to the question before us until it is first made to appear that the plaintiff was bound to inquire at all. If he was, the only facts known to him which originated that duty were the absence of dividends and assessments and the loss of his money by the collapse of the company, of which he became satisfied in 1871. But the enterprise might fail without raising even a suspicion that it had already failed when plaintiff bought his stock. He took the chances of a possible failure. He knew that oil might not be found, and when no dividends and no assessments came he might very well make up his mind that the investment was lost and his money gone. There was in that no hint or suggestion of the fraud previously perpetrated. The facts were entirely consistent with

perfect honesty in the sale of the stock by defendant, and carried no suggestion and furnished no indication that a falsehood had been uttered and an actual failure concealed when the stock was sold. Why should the plaintiff have suspected his friend of such a deception? The latter presumably had his money in the enterprise, had taken the same risk, had met the same fate. The plaintiff had only reason to suppose that both had risked their capital upon a hopeful and encouraging chance of profit, and both had lost it without fault or fraud on any hand or in any direction. It seems to me an inevitable conclusion that the known fact of the failure of the enterprise was not calculated to give to the plaintiff the remotest hint that such failure had already occurred when he bought his stock, and that instead of getting as he supposed a hopeful business chance he was saddled with a loss already certain. A contrary theory would commit us to the rash doctrine that every investment which fails implies that it had already failed when it was made, and the vendor knew it. No such inference is natural, and no man should be expected or required to draw it. There must be something else and more to raise the duty of inquiry and justify a suspicion of fraud. There was nothing more in this case. The facts known to the plaintiff were not the facts which constituted the fraud, and suggested only that he had bought a fair and hopeful chance of large profit; that in the end the chance had failed, and that the investment was lost. These facts gave no indication that he had never owned a chance at all, but had been tricked into a purchase when failure had come and was known to the vendor. It does not alter the situation if plaintiff bore his loss silently and made no inquiry into details. There was no motive for investigation, for there was no basis for suspecting anything but honest misfortune. Occasionally, he says, he did inquire of the defendant, who, as president of the company, was presumed to know all that had happened, and was steadily encouraged by assurances that everything was right and would come out right. Be that as it may, I am unable to see proof of any fact brought to the

knowledge of the plaintiff at all calculated to raise a suspicion of fraud in the mind of a reasonable man, and so put him upon the need of inquiry. Nothing had occurred to take the case out of the rule, which applies where there are no suspicious or significant facts, that the party defrauded owes no primary duty of active vigilance to discover a merely possible fraud.

While it is not in all respects a pleasant duty to sustain a claim so long delayed as this, we must yet faithfully adhere to the rule which the statute has given us. A demand cannot be regarded as stale when it is enforced within the period which the law explicitly permits.

Most of the remaining objections to a recovery were sufficiently answered in plaintiff's favor by the General Term opinion. There were, however, numerous exceptions to the admission and rejection of evidence, some of which are now pressed to sustain the reversal. They have all been examined without bringing us to the conclusion that they involve reversible error.

The order of the General Term should be reversed and the judgment of the Special Term affirmed, with costs.

All concur, except ANDREWS, Ch. J.. not sitting and HAIGHT, J., not voting.

Ordered accordingly.