In the Matter of the Application of the Directors of the SEN-
ECA OIL COMPANY for the Voluntary Dissolution of Said
Corporation.

JAMES G. GRAHAM and E. B. MITCHELL, Appellants; ARCHIE
E. BAXTER and Others, Respondents.

Fourth Department, November 13, 1912.

**Corporation — voluntary dissolution — determination of controversy
between stockholders — distribution of assets — evidence — rights of
preferred stockholders — assignment of stock — issuance of stock —
presumption as to regularity and consideration — value of leases
given as consideration for stock.**

Where in a petition by all the directors of a solvent domestic corporation
for a voluntary dissolution thereof, it is alleged that certain stockholders
claim the right to a preference on the distribution of the assets, the
referee appointed may hear and determine the controversy between the
stockholders, and the court may provide by its final order for the
distribution of the assets among those entitled thereto.

Conflicting evidence as to the rights of holders of preferred stock to a
preference examined, and *held*, that there was an actual agreement
that a preference should be given to such stockholders not only as to
the dividends but also on the distribution of assets.

An assignee of preferred stock takes it subject to all equities which existed
as to it in the hands of his assignor.

There is a presumption that stock has been regularly issued and for a
valuable consideration until the contrary is shown.

Where a controversy arises as to an agreement whereby common stock
was issued to stockholders in proportion to their several interests in cer-
tain leases which were to be transferred to the company as considera-
tion, it is competent to ask a witness as to the value of the leases.

APPEAL by James G. Graham and another from so much of
a final order of the Supreme Court, made at the Erie Special
Term and entered in the office of the clerk of the county of
Cattaraugus on the 20th day of May, 1912, as confirms the
report of a referee and directs the distribution of the assets of
the Seneca Oil Company to the persons and in the manner and
proportions specified therein, with notice of an intention to
bring up for review an order entered in said clerk's office on
the 31st day of March, 1911, appointing a referee and directing
him to hear and determine the issues.

*John J. Inman* [*James G. Graham* with him on the brief], for the appellants.

*George W. Cole,* for the petitioning directors, respondents.

*M. B. Jewell,* for A. E. Baxter and other stockholders, respondents.

ROBSON, J.:

This proceeding was begun by the presentation to the Supreme Court of a petition of all the directors of the Seneca Oil Company, a domestic stock corporation, for a voluntary dissolution of the corporation pursuant to the provisions of section 170 of the General Corporation Law (Consol. Laws, chap. 23; Laws of 1909, chap. 28). On the presentation of the petition to the Special Term an order was made appointing a referee and requiring all persons interested in the corporation to show cause before him at a place and time therein fixed why the corporation should not be dissolved. The petition, in addition to the statements required by section 174 of the law (as amd. by Laws of 1909, chap. 240) to be embodied therein, contained an allegation in substance that a controversy had arisen among the stockholders concerning the distribution of the assets of the corporation, certain stockholders claiming the right to a preference on such distribution. The order by which the referee was appointed recites the fact of such controversy and directs the referee to "hear the allegations and proofs of the parties and particularly as to the conflicting claims of the stockholders as set forth in said petition and determine the facts, and that said referee make his report in writing and file the same with all convenient speed," etc. It is this part of that order to which objection is made by appellants as unauthorized. The referee found that certain stockholders are entitled to a preference in the distribution of the assets of the corporation. This finding, confirmed, as modified by the court at Special Term by its final order in said proceedings, and the distribution of the funds directed in accordance with that determination, are urged by appellant as the principal reasons why the final order was erroneous.

Assuming that appellants are in a position to urge their

objections on this appeal, I think the orders are right. Appellants insist that neither the court, nor the referee, had power in these proceedings to determine the controversy between the stockholders, to which I have referred. The proceeding being purely statutory, of course the provisions of the statute must be followed; and the authority of the court therein is limited to that given by the statute itself. But the court must have implied authority to do whatever is necessary to render effective the contemplated purpose of the proceedings, which the statute authorizes. No necessity of appointing a receiver appeared, or was claimed to exist, and the corporation was confessedly solvent. Section 191 of the law (as amd. by Laws of 1909, chap. 240) provides, among other things, as follows: "But in the case of a solvent corporation, the court may, if there is no objection by creditors, dispense with a receiver and provide in the final order for the distribution of the assets." No creditor objected to a distribution of the assets by the final order. The court might, therefore, provide by its final order for the distribution of the remaining assets among those entitled thereto. To accomplish this it was necessary to first determine the relative rights of the stockholders as between themselves in the distribution of the corporate assets. So far as the exercise of that implied power is necessary to ascertain who are rightfully entitled to share in the distribution, which the court is specifically empowered to direct, and the share to which each is entitled, it must necessarily be given to the court else the court could not direct any proper distribution of the assets. Of course, this implied power extends only so far as the necessities of the case require in order to make a just and equitable distribution; and the jurisdiction of the court cannot be extended by implication to include a matter not directly involved in the authorized proceeding as was held in *Matter of Binghamton General Electric Co.* (143 N. Y. 261).

The court, having the power to determine by its final order in this proceeding how and to whom the assets of the corporation should be distributed, the next inquiry is, was the determination it made correct? Here it is important in the first place to note that appellants' counsel concedes that in addition to the common stock there was an issue and sale of preferred

stock to the extent determined by the final order, which stock is now held by the persons named therein as the owners thereof. It is also conceded that the holders of the common stock are estopped from questioning the legality of the issue of preferred stock as actually made. This is conceded; though it clearly appears that the provisions of the statute prescribing how preferred stock may be issued were not in this instance complied with. That the stock was issued as preferred stock being conceded, the sole controverted issue remains to what extent was it agreed by the holders of the common stock that that preference should be given to the preferred stock. If the holders of the common stock are estopped from questioning the legality of the preferred stock as issued, then certainly upon the same principle they are estopped from questioning the validity of the agreement which the holders of the common stock actually made; and the inquiry reverts to the determination of what that agreement actually was; because this agreement is the ground upon which estoppel can in either event be predicated. It is sufficient for the present purpose to say that the court has determined upon conflicting evidence that the preferred stock certificates providing for a preference only as to the dividends at the rate of twelve per cent per annum did not express the agreement pursuant to which the issue of preferred stock was made; and that the actual agreement was that a preference should be given to this stock not only as to the dividends but also on the distribution of assets.

It is claimed that appellant Mitchell, who is now the owner by assignment of the common stock originally issued to Wilbur, is not bound by the agreement made by Wilbur as to the preferred stock as Wilbur would have been if he still held this stock. Wilbur was a party to the agreement providing for the issue of preferred stock. Mitchell, to whom the stock was assigned, took it burdened with any equities in relation to the stock which existed as to it in the hands of his assignor. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 188.)

It is also urged that the Bushnell common stock, which appears to have been purchased by the treasurer of the company for the company and then transferred to such holders of preferred stock as had no common stock, was improperly issued

to such holders, and should in fact be deemed to be stock owned by the company and, therefore, not entitled to share in the distribution of assets. It is sufficient to say upon this point that the evidence as to the purchase of this stock for the company and its subsequent issue to the various preferred stockholders is so meagre that the court was warranted in refusing the request to find that it was issued without consideration. True what the consideration was does not appear.

On the other hand it is not shown that it was issued without consideration. Until that fact is made to appear it must be presumed that it was regularly issued and for value. (*Kent* v. *Quicksilver Mining Co., supra*, 183.)

The objection now made to the allowance of the claim of Hamilton for the sum of $250, money loaned by him to the corporation May 20, 1905, together with interest thereon to the date of the report, upon the ground that this claim was barred by the Statute of Limitations, seems to be without merit.

Of the many exceptions to the admission of evidence reference is especially made to one as presenting error, requiring a reversal of the order. The original agreement under which the common stock was issued provided that it should be issued to the parties to the agreement in certain agreed proportions according to their several interests in certain Indiana oil leases, which were to be tranferred by these parties to the company and they were to receive this common stock in payment therefor. The face value of stock so issued was $100,000. This was all the common stock ever issued, and practically all the corporation received for the stock were these leases. A witness was asked what these leases cost these promoters. This was objected to, overruled and exception taken. The answer was $1,100. In the first place, even if this evidence was incompetent or immaterial, I do not think its reception would be error so prejudicial as to require a reversal of the order for that reason alone. I do think, however, it was entirely competent. Every purchaser of a share of preferred stock paid $80 for a $100 share. The recipients of the common stock turned in these oil leases and received common stock in return at the rate of about $1 per $100 share. The sale of the preferred stock was the only method, except by borrowing it,

by which the company obtained real money to develop these leases. What the leases represented in money value was competent as bearing upon the probabilities as to which version of the agreement made by holders of the common stock as to the extent of preference to be given the preferred stock was the true one. The other exceptions are unimportant, if the court had power to pass upon the rights of the different classes of stockholders in making a distribution of assets.

The orders, so far as appealed from, should be affirmed, with costs.

All concurred.

Orders, so far as appealed from, affirmed, with costs.