**SHEEHAN et al. v. MUNICIPAL LIGHT & POWER CO. et al.**

District Court, S. D. New York.

April 21, 1943.

William J. Rapp, Satterlee & Warfield, R. Randolph Hicks, and James F. Dwyer, all of New York City, for plaintiffs.

Willkie, Owen, Otis, Farr & Gallagher, Harold H. Corbin and H. Bartow Farr, all of New York City, for defendants.

BONDY, District Judge.

This action was brought in October, 1939, by Minnie Sheehan, the holder of preferred and common stock of the Inter-City Power Company on behalf of herself and other stockholders of the Inter-City Power Company (hereinafter referred to as Inter-City), against the defendants, to set aside a judgment filed December 20, 1922, by the Municipal Light & Power Company (here-

inafter referred to as Municipal), against the Long Acre Electric Light & Power Company (hereinafter referred to as Long Acre), a decree directing the sequestration and sale of its property including its franchise, the sale made pursuant thereto and the ultimate transfer of its property to New York Edison Company, now Consolidated Edison Company of New York, Inc. (hereinafter referred to as Edison Company), and for a decree for the return thereof by Edison Company to Long Acre.

The charters of Municipal, Inter-City and Long Acre were forfeited for non-payment of taxes before the bringing of this action. Many of the persons who were parties to the transactions involved herein died before the trial of this action and Minnie Sheehan, the plaintiff, died after the trial thereof.

On December 20, 1922 judgment for $328,860.76 was rendered by default in favor of Municipal against Long Acre on eighty-two notes drawn between April 8, 1917 and October 21, 1922 by Long Acre Electric Light & Power Company, F. B. Lasher, Treasurer, to the order of Municipal Light & Power Company, and endorsed without recourse by the Municipal Light & Power Company, Paul W. Fisher, as Assistant Treasurer, or as Treasurer. Most of these notes so endorsed before the beginning of the action thereon had been loaned to A. B. Leach & Company, Inc. with the previous consent of all the stockholders of Municipal and had been hypothecated by A. B. Leach & Company, Inc. as collateral for a loan made by H. L. Doherty & Company to A. B. Leach & Company, Inc.

The summons and complaint in the action on the notes and the subpoena and complaint in the sequestration suit were served on F. B. Lasher. At the time, he was vice-president and a director of Municipal, owning one share of its stock, and also secretary and treasurer and a director of Long Acre.

Minnie Sheehan contended that the judgment and decree were fraudulently obtained and that service of the summons and subpoena on F. B. Lasher did not give the court jurisdiction to entertain the actions against Long Acre. She urged that the advances were made by A. B. Leach & Company, a New York corporation, but that the notes were made by Long Acre, a New York corporation, payable to the order of Municipal, a New Jersey corporation, for the collusive purpose of enabling the action on the notes to be brought in a federal court.

Municipal was organized in 1902. It carried on its business separate and distinct from that of any other person or corporation. It had assets amounting to millions of dollars and income amounting to hundred thousands of dollars. It was not a paper company without assets, as is alleged in the complaint. It was not incorporated nor used for the collusive purpose of conferring jurisdiction upon the federal courts.

Before April, 1917, money was advanced by Harvey Fisk & Sons, as well as A. B. Leach & Co., to Long Acre to keep in existence its franchise for the generation and distribution of electric light and power in the City of New York.

Since April, 1917 advances for that purpose were made by Municipal to Long Acre and the notes were given by Long Acre to Municipal when the advances were made and not all at one time just before the action was begun, for the purpose of conferring jurisdiction upon a federal court, as Minnie Sheehan contended. That the advances for which the notes were given were actually received by Long Acre has been clearly established and that Long Acre became obligated to repay the same can not be questioned successfully.

Although most of the notes had been loaned to A. B. Leach & Co., Inc. and hypothecated by it to H. L. Doherty & Co. before the action was begun, it does not follow as plaintiff contends that the action thereon could be brought only by A. B. Leach & Co., Inc. or H. L. Doherty & Co. and not by Municipal, the payee of the notes. It does not appear that at the time the action was begun A. B. Leach & Co., Inc. or H. L. Doherty & Co. still held or owned the notes endorsed in blank. Some of the notes on which the action was brought were never transferred by Municipal and Municipal had an interest in all the notes. The complaint alleges that the Municipal Light & Power Company was the owner and the holder of the notes. The attorney, who brought the action for Municipal, had possession of the notes and presented them to the clerk when he entered judgment. The possession of the notes

created a presumption that the person in possession was the owner thereof. See Corporation Holding Co., Inc. v. Wieber, 230 App.Div. 636, 246 N.Y.S. 109; National Bank of Bay Ridge v. Albers, 244 App. Div. 127, 278 N.Y.S. 381.

■ The holder of a negotiable instrument may sue thereon in his own name and payment to him discharges the instrument. Negotiable Instruments Law, Section 90, Consol.Laws c. 38. This applies even when the holder is acting only as an agent to collect the same for the beneficial owner. Pusey & Jones Co. v. Hanssen, 3 Cir., 279 F. 488, 493, 494, reversed on other grounds 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763; Hays v. Hathorn, 74 N.Y. 486, 490.

That A. B. Leach & Co., Inc., to whom the notes had been loaned, and H. L. Doherty & Co., to whom they had been hypothecated, and Long Acre, the maker of the notes, were residents of the State of New York, did not prohibit the bringing of the action in a federal court by Municipal, a New Jersey corporation and the holder of the notes, against Long Acre.

■ The provision, 28 U.S.C.A. § 41(1), that no District Court shall have cognizance of a suit to recover upon any promissory note in favor of any assignee or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation unless such suit might have been prosecuted in such court to recover upon said note or other choses in action if no assignment had been made, clearly is not applicable to an action on a note made payable to order by a corporation on which the payee could have sued in the District Court. See Emsheimer v. New Orleans, 186 U.S. 33, 22 S.Ct. 770, 46 L.Ed. 1042; Lipschitz v. Napa Fruit Co., 2 Cir., 223 F. 698; Moore Bros. Glass Co. v. Drevet Mfg. Co., C.C., 154 F. 737.

■■ The summons and complaint were served upon F. B. Lasher, secretary and treasurer of Long Acre in compliance with the New York Civil Practice Act, Sec. 228 and gave the court jurisdiction over the defendant. The fact that F. B. Lasher was secretary and treasurer of Long Acre and vice-president, director and the owner of one share of stock of Municipal did not render the service upon him void in the absence of concealment or other fraud on the part of Municipal or Lasher. Even if A. B. Leach or A. B. Leach & Co., Inc. owned the controlling stock interest and actually dominated the corporations at the time the action on the notes was brought that would not establish that the service was collusive or void. Compare City of Toledo v. Toledo Rys. & Light Co., 6 Cir., 259 F. 450, 455, 456.

■ The possibility of fraud or concealment which might have been suspected by reason of Lasher being an officer of both the plaintiff and defendant corporations is excluded by the fact that on November 4, 1922 and before the action was brought Lasher, as secretary of Long Acre, wrote to Inter-City Power Company, which Minnie Sheehan claimed to be the beneficial owner of all the stock of Long Acre, in care of Durning its president, who was not under the control of but entirely independent of A. B. Leach, A. B. Leach & Co., Inc. and Municipal, advising the company that he has been requested by A. B. Leach & Co., Inc. to inform it about the affairs of Long Acre in order that those who are interested may take such steps as they deem advisable for their protection; that for several years expenses of the company had been advanced by A. B. Leach & Co., Inc. and the Municipal Light & Power Company and that these companies are unwilling to advance any further sums and have demanded payment of the amount due them; that the interest on the outstanding bonds is past due and unpaid, which will mean ultimate foreclosure unless some step is taken to prevent it and that if those interested in the company desire to take any action to protect its assets and avoid the litigation which appears imminent, it is imperative that steps to this end be taken promptly and that if requested, he will undertake to learn if it is the desire of any of those in interest to hold a meeting or to propose any plan.

On November 21, 1922, Lasher again wrote to Inter-City Power Company in care of Durning, that he had been served with a summons and complaint in an action in the United States District Court in which Municipal Light & Power Company is the plaintiff and the Long Acre is defendant; that for several years he remained an officer of Long Acre at the request of several of those in interest, including A. B. Leach & Co., Inc. and that the former president of the company resigned September, 1922; that as the Long Acre has practically no business, its operations for the purpose of

meeting the requirements of its franchise have been possible only through loans made to it which are now the subject of the action and are stated to amount to $277,175.75 and interest, and that the information is sent to those who may be interested in order that they may take such steps as they desire for their protection and proceed in respect to said complaint as may be deemed best and that he would assume no responsibility in the matter nor take any action in relation to it. Copies of this letter were sent to record holders of Long Acre stock and other parties in interest.

On December 5, 1922, Durning, president of Inter-City, sent a letter to the stockholders of Inter-City, stating that A. B. Leach notified the writer that he will no longer finance Long Acre and has caused an action to be commenced against Long Acre for the amount of its indebtedness to the Municipal; that the stock of the Long Acre is the only asset of Inter-City and if the action commenced by Municipal is successful, the stock of the Long Acre will be of no value; that he accordingly deemed it advisable for the stockholders of Inter-City to meet at his office on Thursday, December 8, at 11 o'clock and that he would appreciate the stockholders or their representatives being present at such meeting. Such a letter was addressed to Minnie Sheehan in care of Edward E. McCall, a former judge of the Supreme Court of the State of New York.

Thereafter, the entry of judgment by default was withheld until December 20, 1922 at the request of Durning, in order to give stockholders of Inter-City an opportunity to consummate some plan to take over Long Acre subject to its outstanding indebtedness, which included a mortgage of $500,-000. It accordingly is apparent that process was not collusively served on F. B. Lasher, who was an officer of both Municipal and Long Acre corporations, for the purpose of concealing the bringing of the action or any other fraudulent purpose. See F. P. McKay Co. v. Savery House Hotel Co., 184 Iowa 260, 168 N.W. 295. The many cases cited by the plaintiff to establish that the service was void are distinguishable. In those there was fraud or collusion or it was to the interest of the person served to conceal and he did conceal the service from the defendant corporation, or service was not made in the manner prescribed by law.

The service was not void and the purchaser at the judicial sale, confirmed by the court, obtained good record title to the property of Long Acre. See The Lessee of Grignon et al. v. Astor et al., 2 How. 319, 43 U.S. 319, 342, 343, 11 L.Ed. 283; Florentine v. Barton, 2 Wall. 210, 69 U.S. 210, 216, 17 L.Ed. 783. The record did not disclose that Lasher was an officer of both Municipal and Long Acre. Edison Company did not instigate nor take any part in the actions. Nor had it any knowledge thereof until July, 1923, when application for permission to exercise the Long Acre franchise was made by Manhattan-Bronx to which the Long Acre property and franchise were conveyed by the buyer at the judicial sale.

The other facts do not disclose that Long Acre had any defense to the action on the notes or that Edison Company or Manhattan-Bronx defrauded Inter-City or Minnie Sheehan.

In 1912, pursuant to a previous agreement made to provide for the financing of Long Acre by Harvey Fisk & Sons, Inter-City was organized and the Manhattan-Transit Company pledged 500 shares of stock constituting all the outstanding capital stock of Long Acre to trustees to secure a $5,000,000 mortgage bond of Inter-City, issued to secure an issue of $3,500,-000 income bonds of Inter-City. It was provided that Inter-City should have the option to buy said stock upon the payment of $25,000 within one year after all the mortgage bonds shall have been paid, redeemed or discharged, and that unless the option was so exercised the stock was to be returned to the Manhattan Transit Company.

In 1917, Minnie Sheehan and the holders of the other income bonds of Inter-City exchanged their bonds for preferred stock of Inter-City.

In its 1916 income tax return Inter-City's bonded indebtedness was stated to be $8,500,000. Its 1917 return, made after the exchange of the income bonds for preferred stock, stated that paid-up preferred stock was $3,352,900, and that the amount of bonded indebtedness then outstanding was "none". In such case the Long Acre stock pledged as collateral security for the bonds was released.

The mere possession by Inter-City or its president of an assigned judgment for $17,847.92 against Manhattan Transit

174

Company could not be held to constitute payment of the $25,000 for the Long Acre stock.

■ The option never has been exercised by the payment of $25,000. Accordingly, it is doubtful that Inter-City ever acquired title to or any beneficial ownership in the Long Acre stock sufficient to enable Minnie Sheehan, a stockholder thereof, to maintain this action.

The evidence did not establish that 2,637 shares of the preferred stock of Inter-City were ever issued to Harvey Fisk & Sons and A. B. Leach & Co., Inc. without consideration or that A. B. Leach & Co., Inc. ever assumed the obligation of paying Inter-City any consideration for those shares. See In Matter of Seneca Oil Co., 153 App. Div. 594, 598, 138 N.Y.S. 78, affirmed 208 N. Y. 545, 101 N.E. 1121. Long Acre could not have availed itself of an overissue of stock by Inter-City as a defense to an action by Municipal against Long Acre. The failure of Lasher in his letters to Inter-City to refer to these shares issued by Inter-City does not constitute evidence of any fraud.

■ In the absence of special damage, neither Inter-City, Minnie Sheehan nor Long Acre could avail themselves of any allegedly improper exercise of the Long Acre franchise by Manhattan-Bronx or Edison Company. Matter of Long Acre E. L. & P. Co., 188 N.Y. 361, 367, 80 N.E. 1101; Steckler v. Pennroad Corp., D.C., 44 F.Supp. 800, 804.

■ The mere fact that the charters of Inter-City and Long Acre were forfeited for non-payment of taxes does not constitute any evidence of fraud. Neither Manhattan-Bronx nor Edison Company was under any obligation to pay franchise taxes of Inter-City, or of Long Acre, the corporate deficit of which in December, 1921 amounted to $1,130,036.38 and in December, 1922 to $1,223,757.57 and the business of which for many years had been operated at a loss.

The evidence does not disclose any fraud in the acquisition on April 22, 1924 by Edison Company from A. B. Leach & Co., Inc. through Gray of control of Manhattan-Bronx, an assignment from Municipal of the notes upon which judgment against Long Acre had been entered, A. B. Leach & Co.'s Inter-City stock and certain other muniments of title, or in the acquisition by the Edison Company in December, 1924

from Fulton Securities Company of outstanding Long Acre bonds, the 500 shares of Long Acre stock, the release by the Manhattan Transit Company of any claims it might have had to the Long Acre stock or franchise, certain Inter-City stock and other releases, without purchasing the Inter-City stock of Minnie Sheehan.

The Edison Company was not under any obligation to buy the stock of Minnie Sheehan. There is no evidence that any other holder of the preferred stock of Inter-City ever threatened to take action to set aside the acts of the defendants, or that the defendants in order to conceal any fraud from the plaintiff and to deprive her of any interest in the Long Acre franchise, purchased all the bonds of Long Acre and the outstanding preferred and common stock of Inter-City, other than the plaintiff's stock, as is alleged in the amendment of the complaint.

Action upon whatever claims Minnie Sheehan individually or as a stockholder of Inter-City had against Manhattan-Bronx or Edison is barred by laches.

Judgment in the action on the notes was filed December 20, 1922, the decree in the sequestration proceedings February 6, 1923, the order of sale of the franchise and other property of Long Acre February 23, 1923. The judicial sale by the receiver to Martin Judge was made March 24, 1923. The order confirming the sale was filed April 2, 1923. Judge conveyed the Long Acre property and franchise to Manhattan-Bronx by deed dated July 2, 1923. On April 22, 1924, Edison acquired from A. B. Leach & Co., Inc. through Gray control of Manhattan-Bronx. In May, 1924 Minnie Sheehan was told that Milton C. Quimby had sold to the Edison Company for Leach his Inter-City stock and that he had authority to offer her $500,000 for her Inter-City stock. On May 7, 1924 she assigned to Quimby a half interest in whatever claims she had arising out of her Inter-City stock ownership. The assignment recites that she has claims against Long Acre, Inter-City, Municipal, Manhattan-Bronx, A. B. Leach, A. B. Leach & Co., Inc. and others, and that the assignment is made in consideration of his selecting and compensating counsel and of his agreement to furnish all information he may have or be able to obtain in furtherance of litigation.

At about the same time she consulted reputable attorneys including former judges

of the Supreme Court of the State of New York.

In her petitions for the examination of A. B. Leach, dated May 31, 1924, she stated upon information and belief that the Long Acre franchise and its stock and all its property went through a form of sale to some person or persons unknown to her and that she sought the aid of the court to obtain by examination the facts in relation to the alleged transfers and the amounts of moneys recovered therefrom, by whom controlled and who has her stock so that she may bring a suitable action to obtain her rights and such moneys as may come rightfully to her by reason of various transactions unknown to her, and she stated that she believed her Inter-City stock was of no value. She, however, did not bring any action until October, 1939.

■ In December, 1924 she gave Quimby, in consideration of the services he had rendered in protecting her interests, a power of attorney to transfer all her interests in Long Acre, Inter-City, Manhattan-Bronx and any company having any interest in her stock or bonds. She accordingly had notice of facts sufficient to suggest the probability that she had been defrauded and sufficient to put her upon inquiry, and she is charged with knowledge of the facts which reasonable inquiry would have divulged. Failure to discover all the details of the fraud does not prevent the statute from running. Sielcken-Schwarz v. American Factors, Ltd., 265 N.Y. 239, 245, 246, 192 N.E. 307; Higgins v. Crouse, 147 N.Y. 411, 415, 416, 42 N.E. 6.

Minnie Sheehan's agreement with Quimby, her petitions for the examination of Leach dated May and June 1924 and her power of attorney executed December 13, 1924 contained recitals showing knowledge of the transactions which she claimed to be fraudulent, and which resulted in the transfer of the franchise to Manhattan-Bronx.

■ The testimony of Leach and Lasher and of officers of Edison Company, its general counsel, its attorney and many others who participated in the transactions, who are dead, is now unavailable. Minnie Sheehan accordingly was guilty of laches prejudicial to the defendants, Foster v. Mansfield, C. & L. M. R. Co., 146 U.S. 88, 13 S.Ct. 28, 36 L.Ed. 899; Norris v. Haggin, 136 U.S. 386, 392, 10 S.Ct. 942, 34 L.Ed. 424; Mackall v. Casilear, 137 U.S. 556, 566, 11 S.Ct. 178, 34 L.Ed. 776; Alsop v. Riker, 155 U.S. 448, 460, 461, 15 S.Ct. 162, 39 L. Ed. 218, and the action by her individually or as a stockholder on behalf of Inter-City is barred. See Backus-Brooks Co. v. Northern Pacific Ry. Co., 8 Cir., 21 F.2d 4, 12, 13, certiorari denied 275 U.S. 562, 48 S.Ct. 120, 72 L.Ed. 427.

■ This action to set aside the judgment to which the statute of limitation applies, See Pitcher v. Sutton, 238 App.Div. 291, 264 N.Y.S. 488, was not brought within ten years after the judgment was filed, or within fifteen years after the transfer of the franchise and other property to Manhattan-Bronx or within six years of the discovery of the alleged fraud or of the time when Minnie Sheehan had notice of facts putting her upon inquiry. This action accordingly would be barred by the statute of limitations and is barred by laches. See Russell v. Todd, 309 U.S. 280, 288, 60 S.Ct. 527, 84 L.Ed. 754; Buttles v. Smith, 281 N.Y. 226, 236, 22 N.E.2d 350; Pitcher v. Sutton, supra; Klin Co. v. New York Rapid Transit Corp., 271 N.Y. 376, 3 N.E.2d 516; Levy v. McClellan, 196 N.Y. 178, 193, 194, 89 N.E. 569; Higgins v. Crouse, 147 N.Y. 411, 415, 416, 42 N.E. 6; Wood v. Carpenter, 101 U.S. 135, 143, 25 L.Ed. 807; Civil Practice Act, Secs. 34, 48 (5), 53.

The complaint accordingly is dismissed.